No. 04-483

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 107

GEORGE BYRUM and VIRGINIA BYRUM,

Plaintiffs and Appellants,

v.

PAUL ANDREN, JOAN ANDREN, L.W. JONES,
LORI JONES, ROBERT CLARK, and LESLIE CLARK,

Defendants, Respondents
and Cross-Appellants.

APPEAL FROM: The District Court of the Fifth Judicial District,
In and For the County of Madison, Cause No. DV 29-2002-001,
Honorable John W. Whelan, Presiding Judge

COUNSEL OF RECORD:

For Appellants:

Holly Jo Franz, Franz & Driscoll, Helena, Montana

For Respondents:

J. Blaine Anderson, Jr. Attorney at Law, Dillon, Montana (Andrens)

John Bloomquist, Abigail St. Lawrence, Doney, Crowley, Bloomquist
& Uda, Helena, Montana (Jones)

Stephanie Gehres Kruer, Attorney at Law, Sheridan, Montana (Clarks)

Submitted on Briefs: May 17, 2005

Decided: May 1, 2007

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 George Byrum and Virginia Byrum (Byrums) appeal the findings of fact and conclusions of law entered by the District Court for the Fifth Judicial District, Madison County, determining that Paul Andren, Joan Andren, L.W. Jones, Lori Jones, Robert Clark, and Leslie Clark (hereafter referred to either individually or collectively as Respondents) did not breach the 1998 Settlement Agreement (Settlement Agreement) between the parties. Respondents further cross-appeal on various issues. We affirm in part, reverse in part and remand for further proceedings consistent with this Opinion.

¶2 Byrums raise the following issues on appeal:

¶3 1. Did the District Court err when it ruled Respondents did not breach the Settlement Agreement?

¶4 2. Did the District Court err when it ordered M. R. Civ. P. 11 (Rule 11) sanctions against Byrums?

¶5 3. Did the District Court err when it allowed Robert Clark to testify concerning issues outside the pretrial order?

¶6 We restate the following issues on cross-appeal:

¶7 4. Did the District Court err in dismissing Respondents' counterclaims?

¶8 5. Did the District Court err in failing to award attorney's fees and costs to Respondents under § 70-17-112(5), MCA?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶9 The parties in this case each own property along or near the Jefferson River in Madison County, Montana. Byrums' property contains an irrigation ditch known as the

2

Old Dutch Ditch (Ditch). The Ditch diverts water from the Jefferson River to the Respondents' respective properties for the purposes of irrigation and other beneficial uses. Byrums moved onto their property in 1993 and have no rights to the water conveyed by the Ditch. The Ditch has been in use for the benefit of Respondents and the previous owners of Respondents' properties since the 1950's. The existence, uses, and functions of the Ditch have remained largely unchanged since that time.

¶10    In 1995—two years after Byrums had moved to their property—Andrens, Clarks, and Browns (Browns were original parties to this lawsuit, but were eventually dismissed) commenced litigation against Byrums over the use and maintenance of the Ditch. The parties settled the 1995 litigation and executed the Settlement Agreement in an attempt to define the rights and duties of the parties with respect to the Ditch. In the Settlement Agreement, Byrums expressly recognized the rights of Respondents to the water rights, ditch rights, and secondary easement rights to the Ditch. Additionally, as the District Court paraphrased in its findings of fact and conclusions of law, the Settlement Agreement obligated Respondents to:

   a. Rebuild the dike/levee structure and install two new steel culvert pipes with "adequate closing headgates";

   b. Level the top of the dike/levee to allow vehicle access;

   c. Use "reasonable and prudent caution" in the installation of the culvert pipes;

   d. Utilize "reasonable means" to assure that the dike/levee does not leak;

3

e. Provide Byrums reasonable notice of at least two weeks, when repairs to the [Ditch] and irrigation apparatus are necessary, unless the repairs are an "emergency";

f. Exercise their access, operation, maintenance, and repair rights in accord with their secondary easement rights and in accord with Montana law; and

g. Install a measuring device in the Ditch on Byrums' property.

Moreover, the Settlement Agreement required that "Byrums agree that they shall not interfere with [Respondents'] reasonable use of their water rights, ditch rights, and exercise of their secondary easement rights."

¶11 The Settlement Agreement was agreed to and adopted by the parties in 1998. Byrums initiated the present litigation against Respondents in 2002. Byrums alleged in their Complaint that Respondents had breached the terms of the Settlement Agreement, created a nuisance, and trespassed onto their property. Byrums' claim of trespass was dismissed shortly before trial. In response, Respondents counterclaimed against Byrums, alleging breach of the Settlement Agreement, interference with their water rights, primary easements, and secondary easements to the Ditch, nuisance, and violation of § 85-1-111, MCA, which provides that "[t]he right of any person . . . to take and use any water . . . from any stream or streams for the purpose of irrigation or any beneficial or industrial pursuit shall not be abridged."

¶12 A trial was held on July 22, 23, and 24, 2003, by the District Court, sitting without a jury. On January 26, 2004, the District Court issued its Findings, Conclusions, and Decree. The court found that Byrums' allegations were without merit and in addition, awarded Rule 11 sanctions against Byrums to Respondents. Furthermore, the District

4

Court found all of Respondents counterclaims "unfounded" and dismissed all counterclaims with prejudice. Byrums appeal and Respondents cross-appeal.

¶13 Additional facts will be discussed where relevant.

**STANDARD OF REVIEW**

¶14 We review the findings of a district court sitting without a jury to determine if the court's findings were clearly erroneous. *See* M. R. Civ. P. 52(a). A district court's findings are clearly erroneous if substantial credible evidence does not support them, if the district court has misapprehended the effect of the evidence or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Ray v. Nansel*, 2002 MT 191, ¶ 19, 311 Mont. 135, ¶ 19, 53 P.3d 870, ¶ 19. Additionally, we must view the evidence in the light most favorable to the prevailing party when determining whether substantial credible evidence supports the district court's findings. *Ray*, ¶ 19. We review a district court's conclusions of law to determine whether those conclusions are correct. *In re Estate of Harms*, 2006 MT 320, ¶ 12, 335 Mont. 66, ¶ 12, 149 P.3d 557, ¶ 12.

¶15 We review a district court's evidentiary rulings for an abuse of discretion. *McDermott v. Carie, LLC*, 2005 MT 293, ¶ 10, 329 Mont. 295, ¶ 10, 124 P.3d 168, ¶ 10 (citing *Busta v. Columbus Hosp. Corp.*, 276 Mont. 342, 353, 916 P.2d 122, 128 (1996)). Absent a showing of such abuse we will not overturn a district court's ruling on the admissibility of evidence. *McDermott*, ¶ 10 (citing *Christofferson v. City of Great Falls*, 2003 MT 189, ¶ 8, 316 Mont. 469, ¶ 8, 74 P.3d 1021, ¶ 8). A district court abuses its discretion if its acts "arbitrarily without employment of conscientious judgment or

5

exceed[s] the bounds of reason resulting in substantial injustice." *McDermott*, ¶ 10

(citing *VonLutzow v. Leppek*, 2003 MT 214, ¶ 14, 317 Mont. 109, ¶ 14, 75 P.3d 782,

¶ 14).

¶16     With regard to the sanctions issue, Rule 11 provides, in pertinent part that:

> The signature of an attorney or party constitutes a certificate by the signer
> that the signer has read the pleading, motion, or other paper; that to the best
> of the signer's knowledge, information, and belief formed after reasonable
> inquiry it is well grounded in fact and is warranted by existing law or a
> good faith argument for the extension, modification, or reversal of existing
> law, and that it is not interposed for any improper purpose, such as to harass
> or to cause unnecessary delay or needless increase in the cost of litigation.
> . . .
> If a pleading, motion, or other paper is signed in violation of this rule, the
> court, upon motion or upon its own initiative, shall impose upon the person
> who signed it, a represented party, or both, an appropriate sanction, which
> may include an order to pay to the other party or parties the amount of the
> reasonable expenses incurred because of the filing of the pleading, motion,
> or other paper, including a reasonable attorney's fee.

¶17     Our standard of review with respect to the imposition of Rule 11 sanctions has

been consistently stated as follows:  "a district court's findings of fact will be overturned

if clearly erroneous, and *a court's legal conclusion that the facts constitute a violation of*

*Rule 11 will be reversed if the determination constitutes an abuse of discretion.*"  *Brandt*

*v. Sande*, 2000 MT 98, ¶ 35, 299 Mont. 256, ¶ 35, 1 P.3d 929, ¶ 35 (citing *D'Agostino v.*

*Swanson*, 240 Mont. 435, 446, 784 P.2d 919, 926 (1990) (emphasis added).  Moreover,

"[w]e will review the case de novo only if the violation is based on the legal sufficiency

of a plea or motion" *Brandt*, ¶ 35, (citing *D'Agostino*, 240 Mont. at 446, 784 P.2d at

6

926).[1]   In closely examining the language of this standard of review, however, we conclude that the proper standard of review is not correctly stated in the foregoing decisions.  Accordingly, we take this opportunity to clarify and re-state our standard of review in Rule 11 cases.

¶18    The foregoing statement of our standard of review was adopted in *D'Agostino* and was constructed as one which "combines the standards utilized by the federal courts." *D'Agostino*, 240 Mont. at 446, 784 P.2d at 926.[2]   Unfortunately, in articulating this composite rule it is apparent that the *D'Agostino* Court conflated our review of the district court's *legal conclusion* that the facts constitute a violation of the Rule (to which a de novo standard of review applies) with the district court's *choice of sanction* once the violation is found (a choice which we review for abuse of discretion).  *D'Agostino*, 240 Mont. at 446, 784 P.2d at 926.  That part of the standard which reads a "court's legal

---

[1] *See also Ponderosa Pines Ranch, Inc. v. Hevner*, 2002 MT 184, ¶ 14, 311 Mont. 82, ¶ 14, 53 P.3d 381, ¶ 14; *Lundquist v. McBeth*, 2001 MT 311, ¶ 13, 308 Mont. 1, ¶ 13, 38 P.3d 831, ¶ 13; *Firestone v. Oasis Telecommunications*, 2001 MT 297, ¶ 12, 307 Mont. 469, ¶ 12, 38 P.3d 796, ¶ 12; *Pospisil v. First Nat. Bank of Lewistown*, 2001 MT 286, ¶ 29, 307 Mont. 392, ¶ 29, 37 P.3d 704, ¶ 29; *Madison Add. Architect. Comm. v. Youngwirth*, 2000 MT 293, ¶ 10, 302 Mont. 302, ¶ 10, 15 P.3d 1175, ¶ 10; *Friends of Wild Swan v. DNRC*, 2000 MT 209, ¶ 58, 301 Mont. 1, ¶ 58, 6 P.3d 972, ¶ 58; *Estate of Miles v. Miles*, 2000 MT 41, ¶ 52, 298 Mont. 312, ¶ 52, 994 P.2d 1139, ¶ 52; *Morris v. Big Sky Thoroughbred Farms*, 1998 MT 229, ¶ 14, 291 Mont. 32, ¶ 14, 965 P.2d 890, ¶ 14; *Carl Weissman & Sons v. D & L Thomas Corp.*, 1998 MT 213A, ¶ 53, 290 Mont. 433, ¶ 53, 963 P.2d 1263, ¶ 53; *Glickman v. Whitefish Credit Union Ass'n*, 1998 MT 8, ¶ 23, 287 Mont. 161, ¶ 23, 951 P.2d 1388, ¶ 23; *Shull v. First Interstate Bank of Great Falls*, 269 Mont. 32, 39, 887 P.2d 193, 197 (1994); *Fjelstad v. State, Through Dept. of Highways*, 267 Mont. 211, 226, 883 P.2d 106, 114-15 (1994); *Wise v. Sebena*, 248 Mont. 32, 38-39, 808 P.2d 494, 499 (1991); and *Harrison v. Chance*, 244 Mont. 215, 226-27, 797 P.2d 200, 207 (1990).

[2] The language of M. R. Civ. P. 11 and F. R. Civ. P. 11 were for all purposes under discussion here identical at the time *D'Agostino* was handed down in 1990.  Montana's rule has remained substantially unchanged since then.  *See* Commission Note and Advisory Committee notes to Rule 11.

7

conclusion that the facts constitute a violation of Rule 11 will be reversed if the determination constitutes an abuse of discretion" is simply incorrect. A court's legal conclusions are not reversed for abuse of discretion; they are reversed if they are wrong. *Harms*, ¶ 12.

¶19 Therefore, clarifying and restating the standard set forth in *D'Agostino*, our standard of review of a district court's decision to grant or deny sanctions under Rule 11, henceforth will be as follows: we review de novo the district court's determination that the pleading, motion or other paper violates Rule 11. We review the district court's findings of fact underlying that conclusion to determine whether such findings are clearly erroneous. If the court determines that Rule 11 was violated, then we review the district court's choice of sanction for abuse of discretion. The cases cited above in ¶ 17 and in *supra* note 1 are likewise clarified to the extent they cite a different standard of review.[3]

## DISCUSSION

### Issue 1.

¶20 *Did the District Court err when it determined Respondents did not breach the Settlement Agreement?*

¶21 This Court has previously determined that settlement agreements are contracts, subject to the provisions of contract law. *Dambrowski v. Champion Intern. Corp.*, 2003 MT 233, ¶ 9, 317 Mont. 218, ¶ 9, 76 P.3d 1080, ¶ 9. The District Court concluded that Respondents did not breach the Settlement Agreement. Byrums argue that Respondents,

---

[3] In adopting this new standard of review, we emphasize that we are not altering the various rules and cases describing the circumstances under which Rule 11 sanctions might or might not be appropriately imposed.

8

having joint and several liability to fulfill the obligations set forth in the Settlement Agreement, breached the terms of the Settlement Agreement and that the District Court erred in not so finding. Byrums make specific arguments in respect to separate obligations set forth in the Settlement Agreement. We will discuss those arguments in turn and, as already noted, we will review whether substantial credible evidence exists to support the District Court's findings and whether such findings are clearly erroneous.

¶22 First, Byrums assert that Respondents failed to install adequate closing headgates pursuant to the first obligation of the Settlement Agreement. Byrums point to Admin. R. M. 36.13.101(9), which requires a headgate "to regulate the amount of water being diverted" and "[to] be capable of being closed completely and to adequately vary the amount of water diverted into a ditch." Byrums contend Respondents installed headgates that leaked and thus, Respondents violated the terms of the Settlement Agreement. In response, Respondents point to testimony at trial that indicates the headgate installations were adequate. Respondents further point out that most, if not all, headgates will leak some water when water levels rise. Respondents conclude that the evidence elicited at trial supports the District Court's finding that adequate headgates were installed to control the flow of water from the Jefferson River into the Ditch.

¶23 The District Court made the following findings of fact in reaching its conclusion that the headgates were properly operated and adequately controlled the flow of water into the Ditch: that Respondents had purchased and installed an R-5 style headgate, which is customarily used by irrigators; that the R-5 headgate installed by Respondents leaked, but that R-5 headgates commonly leak and that any leaking here was minimal

9

without posing any risks to property; and that the headgates freely opened and closed as desired. Moreover, testimony at trial supported the District Court's findings. For example, testimony indicates that the R-5 headgate is the only type of headgate that would have worked on the Ditch. Furthermore, Respondents' expert, Tom Miller, testified that R-5 headgates commonly leak, that any leaks on account of the headgates are minimal, and that the headgate in question was properly installed. Thus, we conclude that substantial evidence supports the court's finding and that finding is not clearly erroneous.

¶24 Next, Byrums allege Respondents violated the Settlement Agreement by not properly installing a measuring device pursuant to the terms of the Settlement Agreement. Byrums explain that because irrigation water rights are measured by flow rates, the required measuring device must measure flow rates and not merely the depth of the ditch water. Byrums point out that the measuring device installed by Respondents measures only the depth of the water in the ditch, not flow rate, and therefore does not meet the requirements of the Settlement Agreement. Respondents respond that a measuring device was installed pursuant to the terms of the Settlement Agreement (which does not expressly require a device that measured flow rates) and that Byrums have proven no damages by the use of the measuring device.

¶25 The District Court found that Respondents did install a measuring device and that Byrums presented no evidence that Respondents' installation and use of the measuring device caused any damages. The court thus concluded that Respondents properly installed and used a measuring device in accordance with the Settlement Agreement.

10

Testimony from trial indicates that Respondents installed the device, but ceased use of the device in 2002 as this litigation had begun. Respondents made this decision on the advice of their legal counsel. Nothing in the record indicates that Byrums were damaged after the measuring device was uninstalled. Thus, the court's finding is supported by substantial evidence and is not clearly erroneous.

¶26 Byrums further allege that Respondents breached another obligation of the Settlement Agreement—that the Ditch be used in accordance with Montana law. Specifically, Byrums argue that because Respondents exceeded their water rights without putting their diverted water to beneficial use, Respondents damaged Byrums' property by eroding the Ditch, widening the Ditch, and flooding Byrums' property. Respondents, on the other hand, assert the Ditch was properly operated and maintained, that the Ditch has not significantly changed in the last 44 years, and that the water diverted in the Ditch was only the amount needed for Respondents' beneficial uses.

¶27 The District Court determined that Respondents have accessed, operated, maintained, and repaired the Ditch pursuant to Montana law. Furthermore, the court found that Byrums' claim that Respondents were using excessive water was unfounded. In so deciding, the District Court made the following findings of fact: that the water being diverted by Respondents was put to beneficial use without waste; that the water diverted by Respondents was properly regulated in quantity; that Respondents have reasonably maintained the Ditch; that Respondents have not exceeded their water rights; and that the Ditch has not been eroded or appreciably changed over the last several decades. Testimony from trial supports the District Court's findings. In particular, Paul Andren

11

testified that in his use of the Ditch, he did not divert more water than necessary or waste any water. L.W. Jones also testified to this effect. Evidence in the record shows that the quantity of water flowing through the property of Byrums was within the amount necessary to irrigate their lands. Other testimony indicates that the Ditch has not been substantially eroded and that Respondents have made efforts to maintain the Ditch as contemplated by the Settlement Agreement, such as removing obstructions like beaver dams. Again, substantial evidence supports the District Court's findings and they are not clearly erroneous on this point.

¶28 Having thus concluded that the District Court's findings of fact in relation to Byrums' claim are supported by substantial credible evidence and are not clearly erroneous, we hold that the District Court correctly concluded that Respondents did not breach the Settlement Agreement. We affirm the District Court's decision in that regard.

**Issue 2.**

¶29 *Did the District Court err when it ordered Rule 11 sanctions against Byrums?*

¶30 The District Court determined that Byrums' "lawsuit was so strongly without merit it was frivolous." In its January 26, 2004 order wherein the court imposed Rule 11 sanctions against the Byrums, the court stated the Byrums had "unnecessarily forced" Respondents into court "to defend their rights and interests in the [Ditch.]" Thus, the court ordered Byrums to pay, as a sanction, each Respondent's costs and attorney's fees.

¶31 Accordingly, we review the District Court's decision under the standard set forth in ¶ 19. Specifically, we review de novo the District Court's determination that the pleading, motion or other paper violates Rule 11. We review the District Court's findings

12

of fact underlying that conclusion to determine whether such findings are clearly erroneous. If the court determines that Rule 11 was violated, we review the District Court's choice of sanction for abuse of discretion.

¶32 The purpose of Rule 11 is to "discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." *Brandt*, ¶ 35 (citing *D'Agostino*, 240 Mont. at 444, 784 P.2d at 925). We have noted that "Montana's Rule 11 is similar in many respects to the federal rule." *Brandt*, ¶ 35. Before a district court may impose sanctions pursuant to Rule 11, it must conduct a hearing for that purpose. *Stipe v. First Interstate Bank of Polson*, 2005 MT 295, ¶ 20, 329 Mont. 320, ¶ 20, 125 P.3d 591, ¶ 20; *Muri v. Frank*, 2003 MT 316, ¶ 22, 318 Mont. 269, ¶ 22, 80 P.3d 77, ¶ 22; *State v. Toole County*, 278 Mont. 253, 263, 924 P.2d 693, 698 (1996); *Lindey's Inc. v. Goodover*, 264 Mont. 489, 497, 872 P.2d 767, 772 (1994). District courts must give notice to the party it proposes to sanction and hold a hearing on whether Rule 11 sanctions are proper. This hearing must take place before Rule 11 sanctions are imposed, so that the party the district court proposes to sanction "will be provided with due process before it is punished." *Stipe*, ¶ 20.

¶33 Here, the District Court, in its January 26, 2004 order, declared that Rule 11 sanctions would be imposed against the Byrums for the "filing of a frivolous and unwarranted Complaint and First Amended Complaint not grounded in fact." The court set a hearing for March 22, 2004, for the purpose of determining the proper amount of Rule 11 sanctions to be imposed against Byrums. All Respondents submitted statements of costs and attorney's fees, and Byrums submitted a brief in opposition.

13

¶34 The District Court properly followed the due process requirements in respect to Rule 11 as laid out in the *Lindey's Inc.*, *Toole County*, *Muri*, and *Stipe* line of cases. The court gave notice to the Byrums that Rule 11 sanctions would be imposed in the January 26, 2004 order. Moreover, a hearing was held on March 22, 2004, to address the issue of Rule 11 sanctions. The District Court complied with all of the requirements set forth in *Lindey's Inc.*

¶35 Byrums nonetheless argue the District Court's order imposing Rule 11 sanctions should be reversed for its failure to make specific findings of fact. Byrums cite to a decision of the United States Court of Appeals for the Fifth Circuit, *Akin v. Q-L Investments, Inc.*, 959 F.2d 521 (5th Cir. 1992), in support of their argument. The court in *Akin* stated that in cases where "the sanctions imposed are substantial in amount, type, or effect," the "district court must enter specific factual findings to assist the appellate court in its review of the Rule 11 sanctions." *Akin*, 959 F.2d at 535. The court also explained that a district court "must impose the 'least severe sanction adequate' to accomplish the purposes of Rule 11." *Akin*, 959 F.2d at 535 (citing *Thomas v. Capital Sec. Services, Inc.*, 836 F.2d 866, 878 (5th Cir. 1988) (en banc)). In reversing a Rule 11 sanction, the court explained "[t]he [district] court did not indicate in the record the factors it considered in choosing a [ ] sanction" and "did not state in the record which alternative sanctions, if any, it also considered." The court concluded that because of the substantial size of the Rule 11 sanction involved, it "may not affirm the sanction until the district court has entered specific factual findings determining whether the sanction is the least severe adequate to serve the purposes of Rule 11." *Akin*, 959 F.2d at 535.

14

¶36    We agree with Byrums and find persuasive the reasoning of the Fifth Circuit as applied to the case at bar.  Here, the District Court made no findings of fact as to why it issued Rule 11 sanctions against Byrums.  Rather, the court merely entered a conclusion of law that Byrums' "lawsuit was so strongly without merit it was frivolous."  Without more and, applying our own standard of review, we are unable to conclude that the District Court correctly concluded, as a matter of law, that the Byrums' pleadings, motions and other papers violated Rule 11, because we are unable to review any findings of fact in support of the District Court's determination in that regard.  That being the case, we are also unable to review the District Court's choice of sanction for abuse of discretion.

¶37    As did the Court of Appeals in *Akin*, we hold that, here, the District Court's order granting Rule 11 sanctions against Byrums must be vacated.  We remand to the District Court for further proceedings as are determined to be necessary by the court and for entry of specific factual findings in support of its determination on whether the Byrums violated Rule 11 and, if so, as to the appropriateness of the choice of the sanction imposed.

**Issue 3.**

¶38    *Did the District Court err when it allowed Robert Clark to testify concerning issues outside the pretrial order?*

¶39    Byrums allege the District Court erred in allowing Robert Clark to testify regarding matters outside of the pretrial order.  Rule 5(c) of the Uniform District Court Rules requires a pretrial order to include a statement that the pretrial order supersedes the

15

pleadings and governs the subsequent course of trial. *Craig v. Schell*, 1999 MT 40, ¶ 44, 293 Mont. 323, ¶ 44, 975 P.2d 820, ¶ 44. Moreover, M. R. Civ. P. 16(e) explicitly provides that the pretrial order controls the subsequent course of the action. *Craig*, ¶ 44 (citations omitted). That said, we have also stated that a district court possesses wide discretion in deciding whether to allow a party to raise a factual issue or legal theory not explicitly raised in the pretrial order, but the court must be mindful not to prejudice the parties. *Hjartarson v. Hjartarson*, 2006 MT 273, ¶ 33, 334 Mont. 212, ¶ 33, 147 P.3d 164, ¶ 33 (citing *Nentwig v. United Industry, Inc.*, 256 Mont. 134, 139, 845 P.2d 99, 103 (1992)).

¶40 At trial, Clark testified to several issues which were not included in the pretrial order adopted by the parties and the District Court. The testimony at issue included events surrounding legal actions that had taken place prior to the Settlement Agreement between the Byrums and Respondents. Counsel for Byrums objected to this testimony and moved to strike the testimony in question from the record. The District Court overruled Byrums' objection and motion.

¶41 As stated above, we review the District Court's evidentiary rulings for an abuse of discretion. *McDermott*, ¶ 10 (citation omitted). Although Clark's testimony regarding past incidents with the Byrums may not have been relevant to the issues set out in the pretrial order, the record also shows that Byrums failed to demonstrate any prejudice from the court's decision to allow Clark to testify on matters that were outside of the pretrial order. *Hjartarson*, ¶ 33. Therefore, we conclude that while the court may have abused its discretion in admitting Clark's testimony, the court's error was harmless.

**Issue 4.**

¶42   *Did the District Court err in dismissing Respondents' counterclaims?*

¶43   Each Respondent separately alleged counterclaims against the Byrums for interference with ditch rights and breach of the Settlement Agreement.  Andrens and Clarks additionally alleged counterclaims on other issues.  The District Court dismissed all of Respondents' counterclaims, concluding that Respondents' allegations were unfounded.  The District Court made limited findings of fact in regard to the counterclaims—generically that: (1) Byrums did not get along with Respondents and vice versa; (2) testimony revealed childlike behavior between the parties; (3) Byrums had not denied Respondents access to the headgate; (4) Byrums had not prevented water from being conveyed down the Ditch; and (5) Byrums had not attempted to operate the headgate.

¶44   Although Respondents each filed separate briefs with regard to their respective counterclaims and cross-appeals, we will first address their claims of interference with ditch rights and breach of the Settlement Agreement arguments together.  We will then separately address Andrens' and Clarks' additional counterclaims.

*Respondents' Interference with Ditch Rights Counterclaim*

¶45   Respondents claim the District Court erred in dismissing their counterclaims against Byrums for interference with their ditch rights.  Respondents point to § 70-17-112(1), MCA, which states that "[a] person with a canal or ditch easement has a secondary easement to enter, inspect, repair, and maintain a canal or ditch."  Additionally, § 70-17-112(2), MCA, states that "[n]o person may encroach upon or

17

otherwise impair any easement for a canal or ditch used for irrigation or any other lawful . . . purpose." Respondents argue that they have not been able to check or maintain the Ditch without interference from Byrums. This interference, as Respondents allege, came in two forms.

¶46 First, Respondents allege physical interference, namely that Byrums had continually confronted Respondents while they attempted to maintain the Ditch, blocked Respondents from accessing the headgate, and verbally harassed Respondents. The District Court found that the Byrums had not denied Respondents access to the headgate and had not prevented water from being conveyed down the Ditch. Testimony from trial indicates that the Byrums did occasionally block Respondents from using the headgates on the Ditch, but that the Byrums eventually allowed access. Evidence in the record supports the District Court's finding that Byrums did not physically deny Respondents' access to the headgate. The court's finding is supported by substantial evidence and is not clearly erroneous in this regard.

¶47 Second, Respondents allege the filing of the underlying lawsuit to this appeal interfered with Respondents' legal right to the use of the Ditch, and has prevented their maintaining the headgate. Respondents cite to *Kephart v. Portmann*, 259 Mont. 232, 855 P.2d 120 (1993), in support of their argument. *Kephart* involved a situation similar to the dispute here. The defendants there possessed an easement across plaintiffs' property for the use of a ditch. The easement allowed defendants to clean and maintain the ditch. Plaintiffs sought to enjoin defendants from maintaining and improving the ditch. *Kephart*, 259 Mont. at 234-35, 855 P.2d at 121-22. The plaintiffs in *Kephart* had

18

acknowledged the existence of the defendants' right to use the ditch based on a prior agreement between the parties and based on defendants' prior use of the ditch. *Kephart*, 259 Mont. at 236, 855 P.2d at 123. We affirmed the district court's determination that the defendants rightfully possessed a ditch easement over the plaintiffs' property, *Kephart*, 259 Mont. at 236, 855 P.2d at 122, and moreover, that plaintiffs had a secondary easement to reasonably enter, inspect, repair, and maintain the ditch. *Kephart*, 259 Mont. at 238, 855 P.2d at 124. Because plaintiffs had previously acknowledged defendants' ditch rights but had, nonetheless, forced defendants into court to defend those rights, we held that the filing of the lawsuit alone constituted an impairment of defendants' easement rights under § 70-17-112, MCA. *Kephart*, 259 Mont. at 239, 855 P.2d at 124.

¶48 Although evidence in the record here supports the District Court's finding that Byrums did not *physically* interfere with Respondents' rights to the Ditch, we agree with Respondents that the District Court failed to apply the rule in *Kephart*—i.e. that the filing of this lawsuit alone could constitute an impairment of Respondents' easement rights under § 70-17-112, MCA. In their original complaint, Byrums alleged that Respondents trespassed onto their property. This claim was made notwithstanding the terms of the Settlement Agreement in which Byrums agreed they would not interfere with the Respondents' reasonable use of their water rights, ditch rights, and secondary easement rights.

¶49 Respondents assert that Byrums' lawsuit and their allegation of trespass interfered with their water rights, ditch rights, and secondary easement rights. The record reflects

19

that Byrums dismissed their trespass claim shortly before trial. Nonetheless, Respondents contend that in pursuing their claim up to the point of trial, Byrums interfered with their ditch and easement rights under § 70-17-112, MCA. We agree. As noted above, the statute provides, in pertinent part:

 (1) A person with a canal or ditch easement has a secondary easement to enter, inspect, repair, and maintain a canal or ditch.
(2) No person may encroach upon or otherwise impair any easement for a canal or ditch used for irrigation or any other lawful domestic or commercial purpose, including carrying return water.

Section 70-17-112(1)–(2), MCA.

¶50 As did the plaintiffs in *Kephart*, Byrums expressly acknowledged Respondents' water rights, ditch rights, and secondary easement rights in the Settlement Agreement. Yet, Byrums filed suit against Respondents alleging trespass based on Respondents' accessing the Ditch for maintenance purposes. As we held in *Kephart*, the filing of the trespass claim impaired and interfered with Respondents' rights under § 70-17-112, MCA. Respondents were forced into court to defend their clearly established rights under the Settlement Agreement. Thus, we hold that the District Court erred in dismissing Respondents' interference claim under § 70-17-112, MCA, and we remand for further proceedings to determine Respondents' damages, if any.

*Respondents' Breach of Settlement Agreement Counterclaim*

¶51 Respondents further argue in their respective counterclaims and cross-appeals that Byrums breached the terms of the Settlement Agreement. The District Court, however, made no findings of fact in respect to this issue and merely concluded in its decree that "[Respondents'] counterclaims are hereby dismissed with prejudice."

20

¶52 M. R. Civ. P. 52(a) provides, in pertinent part:

> In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58.

We have explained that "[t]he litmus test is whether a district court's order sets forth reasoning, based upon its findings of fact and conclusions of law, in a manner sufficient to allow informed appellate review." *Snavely v. St. John ex rel. Est. of Snavely*, 2006 MT 175, ¶ 11, 333 Mont. 16, ¶ 11, 140 P.3d 492, ¶ 11; *Shammel v. Canyon Resources Corp.*, 2003 MT 372, ¶ 28, 319 Mont. 132, ¶ 28, 82 P.3d 912, ¶ 28; *Lake v. Lake County*, 233 Mont. 126, 134, 759 P.2d 161, 165 (1988). If the district court's "findings and conclusions are clear to this Court, failure to state them in the recommended form is not substantial error." *Snavely*, ¶ 11; *Clemans v. Martin*, 221 Mont. 483, 487, 719 P.2d 787, 789 (1986); *In re Marriage of Barron*, 177 Mont. 161, 164, 580 P.2d 936, 938 (1978). "It is not this Court's task, however, to review the record with the purpose of making our own findings." *Snavely*, ¶ 11; *Continental Realty, Inc. v. Gerry*, 251 Mont. 150, 154, 822 P.2d 1083, 1086 (1991).

¶53 Here, the District Court made no findings of fact in respect to Respondents' counterclaim against Byrums for breach of the Settlement Agreement. The court moreover made no specific conclusions of law in respect to the same, but instead, summarily concluded that Respondents' counterclaim should be dismissed with prejudice.

¶54 Without more, we are unable to evaluate the parties' arguments on the breach of the Settlement Agreement issue. Although the District Court recognized that

21

Respondents had counterclaimed for breach of the Settlement Agreement, "it is not enough that the trial court simply regurgitate the contentions of the parties and then reach a conclusion." *Snavely*, ¶ 18. Rather, the District Court "must also make factual findings and combine those with a logical, reasoned analysis and application of the law to the facts." *Snavely*, ¶ 18.

¶55 The District Court failed to set forth its findings of fact and its conclusions of law in compliance with M. R. Civ. P. 52(a) in respect to Respondents' counterclaim for breach of the Settlement Agreement. Thus we are unable to address this issue on appeal. Section 27-12-201, MCA; *Snavely*, ¶ 19; *Ray*, ¶ 19. The District Court's order dismissing Respondents' counterclaim for breach of the Settlement Agreement must be vacated. We remand this issue with instructions that the District Court reconsider Respondents' breach of the Settlement Agreement counterclaim and enter appropriate findings of fact and conclusions of law thereon.

*Andrens' Statutory and Nuisance Counterclaims*

¶56 Andrens individually contend that Byrums violated § 85-1-111, MCA, by interfering with their access to the Jefferson River, a navigable river. This statute states, in pertinent part, that "[t]he right of any person . . . to take and use any water . . . from any stream or streams for the purpose of irrigation or any beneficial or industrial pursuit shall not be abridged." Section 85-1-111, MCA. Andrens argue Byrums violated this statute by interfering with Andrens' efforts to build an emergency barb to bring water into the Ditch. The specific behavior Andrens point to is Byrums' use of video and audio taping while Andrens were attempting to install the emergency barb to control river flow.

Moreover, Andrens argue that Byrums' video and audio taping actions in this respect constitute a nuisance. In further support of their nuisance claim, Andrens also point to Byrums' use of a private airplane used in such a way to "buzz" the Andrens' home.

¶57 Again, the District Court entered no findings of fact or conclusions of law in respect to Andrens' alleged violation of § 85-1-111, MCA, or their nuisance claim. The court simply and summarily concluded that "[Respondents'] counterclaim alleging . . . harassment is unfounded."

¶58 As we did with respect to the previous issue—and for the same reasons—we conclude the District Court's order dismissing Andrens' statutory and nuisance counterclaim must be vacated. We remand this issue with instructions that the District Court reconsider Andrens' counterclaims for violation of § 85-1-111, MCA, and for nuisance and enter appropriate findings of fact and conclusions of law thereon.

*Clarks' Emotional Distress Counterclaim*

¶59 Clarks individually allege on cross-appeal that Byrums' actions in regards to the Ditch and this litigation have caused them serious and severe emotional distress. Clarks assert that substantial evidence exists on the record to support their claim. We note that Respondents did not request emotional distress damages in their collective prayer for relief in the original counterclaim against Byrums. Clarks, however, in their individual amended counterclaim, request special damages in their prayer for relief. Accordingly, we must determine whether emotional distress damages are "special damages" for the purposes of Clarks' cross-appeal.

23

¶60 "Special damages are the natural but not necessary result of the wrong or breach; whereas general damages are damages the law would impute as the natural, necessary and logical consequence of the wrong or breach." *Purington v. Sound West*, 173 Mont. 106, 111-12, 566 P.2d 795, 798 (1977). Clarks have failed to cite any authority that would persuade us that emotional distress damages are the natural, necessary and logical consequence of Byrums' alleged interference with Clarks' rights to the Ditch. Thus, by default, Clarks' claimed emotional distress damages are special damages.

¶61 Under M. R. Civ. P. 9(g), Clarks were required to "specifically state" special damages in their pleadings. This Rule provides that "[w]hen items of special damage are claimed, they shall be specifically stated." Because they did not "specifically state" their request for emotional distress damages, as required by M. R. Civ. P. 9(g), Clarks failed to plead such damages properly. That does not dispose of this issue, however.

¶62 At trial Clarks raised the issue of emotional distress and Byrums cross-examined Robert Clark on this issue. Although Byrums objected to much of Mr. Clark's testimony as being outside the pretrial order (discussed above), the record reveals that that Byrums did not specifically object to Clark's testimony regarding emotional distress.

¶63 M. R. Civ. P. 15(b) provides, in pertinent part:

> **Amendments to conform to the evidence.** When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; *but failure to so amend does not affect the result of the trial of these issues*.

(Emphasis added). Clarks raised the issue of emotional distress during trial and Byrums cross-examined Mr. Clark on the issue. Thus, Clarks' emotional distress claim was tried by the "implied consent of the parties" and should thus "be treated in all respects as if [it] had been raised in the pleadings." M. R. Civ. P. 15(b). Although there is no indication in the record that Clarks made a motion to amend the pleadings to conform to the evidence regarding emotional distress damages elicited at trial, a failure to move to amend the pleadings "does not affect the result of the trial of these issues." M. R. Civ. P. 15(b).

¶64    Clarks' claim of emotional distress having been tried, the District Court was required to issue findings of fact and conclusions of law in respect to this claim. The court entered no findings of fact or conclusions of law on Clarks' claim; the court simply and summarily dismissed it. Accordingly, and for the same reasons previously discussed, we conclude that the District Court's order dismissing Clarks' emotional distress counterclaim must be vacated. We remand this issue with instructions that the District Court reconsider Clarks' counterclaim and enter appropriate findings of fact and conclusions of law thereon.

**Issue 5.**

¶65    *Did the District Court err in failing to award attorney's fees and costs to Respondents under § 70-17-112(5), MCA?*

¶66    In their cross-appeals, Respondents argue they are the prevailing party and entitled to costs and reasonable attorney's fees under § 70-17-112(5), MCA. Section 70-17-112, MCA, again, provides:

    (1) A person with a canal or ditch easement has a secondary easement to enter, inspect, repair, and maintain a canal or ditch.

25

(2) No person may encroach upon or otherwise impair any easement for a canal or ditch used for irrigation or any other lawful domestic or commercial purpose, including carrying return water.

. . . .

(5) If a legal action is brought to enforce the provisions of this section, the prevailing party is entitled to costs and reasonable attorney's fees.

¶67 We have held that "in order to be deemed a 'prevailing party' for purposes of § 70-17-112(5), MCA . . . a party must successfully prevail on *all* claims raised pursuant to this statute." *Espy v. Quinlan*, 2000 MT 193, ¶ 28, 300 Mont. 441, ¶ 28, 4 P.3d 1212, ¶ 28 (citation omitted). Moreover, where a party brought an action under § 70-17-112, MCA, "and then failed to prevail on *any* of his claims, the other party was entitled to costs and fees." *Engel v. Gampp*, 2000 MT 17, ¶ 40, 298 Mont. 116, ¶ 40, 993 P.2d 701, ¶ 40, *overruled in part on other grounds*, *Shammel*, ¶ 12 n. 2.

¶68 Respondents brought their counterclaims to enforce the provisions of § 70-17-112, MCA. As we held in ¶ 50, the District Court erred in determining that Byrums had not interfered with Respondents' rights under § 70-17-112, MCA. Accordingly, as a matter of law, Respondents are the prevailing party for the purposes of this issue. Thus, the District Court's failure to award Respondents their costs and reasonable attorney's fees pursuant to § 70-17-112(5), MCA, is reversed and remanded for further proceedings consistent with this Opinion.

¶69 Before leaving this discussion, however, we must address one other matter. Pursuant to Issue 2, we remanded this cause to the District Court for further proceedings as are determined to be necessary by the court and for entry of specific factual findings in support of its determination on whether Byrums violated Rule 11, and if so, as to the

appropriateness of the choice of sanction imposed. *See* ¶¶ 29-37. Under the instant Issue, we are remanding for further proceedings for the determination of costs and attorney's fees for Byrums' violation of § 70-17-112, MCA. This raises the question of whether Byrums may be chargeable with both Rule 11 sanctions and statutory costs and attorney's fees.

¶70 Because we did not locate any cases directly on point, we look to the Advisory Committee Notes to F. R. Civ. P. 11, from which Montana's Rule 11 derives. The Committee notes state:

> Rule 11 is not the exclusive source for control of improper presentations of claims, defenses, or contentions. *It does not supplant statutes permitting awards of attorney's fees to prevailing parties or alter the principles governing such awards.* It does not inhibit the court in punishing for contempt, in exercising its inherent powers, or in imposing sanctions, awarding expenses, or directing remedial action authorized under other rules or under 28 U.S.C. § 1927.

(Emphasis added).

¶71 As already noted, an attorney or party is sanctioned under Rule 11 for signing and interposing pleadings, motions, and other papers for the improper purposes set out in the Rule. *See* ¶¶ 16, 19, 32. On the other hand, a person is punished pursuant to § 70-17-112, MCA, for forcing the plaintiff to vindicate in court his or her rights under the statute. In short, the conduct being punished is distinct under each respective source of authority.

¶72 Therefore, we conclude that the District Court may award sanctions for both a Rule 11 violation and statutory attorney's fees and costs. That said, however, we also conclude that if the District Court chooses to impose attorney's fees and costs as a

sanction for the Rule 11 violation, it must insure that the attorney's fees and costs imposed for that violation are not based on the conduct for which attorney's fees and costs are awarded under the statute. Parties are entitled to be awarded their attorney's fees and costs once for conduct sanctioned under the statute and under the Rule (if awarding fees and costs is the sanction imposed). Litigants are not, however, entitled to duplicate awards for the same conduct. We expect that the District Court will sort through these matters and issue specific findings of fact following an evidentiary hearing.

## CONCLUSION

¶73     In summary, we affirm the District Court's decision that Respondents did not breach the Settlement Agreement. Byrums' unsuccessful appeal of that issue is therefore affirmed. However, we order the District Court's grant of Rule 11 sanctions against Byrums vacated and we remand this issue to the District Court for further proceedings in accordance with our discussion and decision under Issue 2. Additionally, we hold that while the District Court may have abused its discretion in admitting Clark's testimony of other incidents with Byrums, the court's error caused no demonstrated prejudice and was therefore harmless.

¶74     With respect to Respondents' cross-appeals, the District Court's erred in finding that Byrums did not interfere with Respondents' rights to the Ditch pursuant to § 70-17-112, MCA. We reverse and remand for further proceedings consistent with our discussion under Issue 4, ¶¶ 45-50. We also reverse and remand to the District Court for further proceedings consistent with our discussion in Issue 4: Respondents' claim that Byrums breached the Settlement Agreement; Andrens' claim that Byrums violated

§ 85-1-111, MCA, and caused a nuisance; and Clarks' claim of emotional distress resulting from Byrums' conduct and their instigation of the instant lawsuit.

¶75 Finally, the issue of Respondents' attorney's fees and costs is reversed and remanded to the District Court for further proceedings consistent with our discussion in Issue 5.

¶76 Affirmed in part; reversed in part; and remanded in part for further proceedings consistent with this Opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE