FILED

09/15/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0595

DA 19-0595

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 231N

IN RE THE MARRIAGE OF:

MARK SWANK,

       Petitioner and Appellee,

  and

CINDY MORRISON, f/k/a CINDY SWANK,

       Respondent and Appellant.

APPEAL FROM:    District Court of the Fifteenth Judicial District,
                 In and For the County of Roosevelt, Cause No. DR-2016-01
                 Honorable David Cybulski, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Brian J. Miller, Morrison, Sherwood, Wilson, and Deola, P.L.L.P., Helena, Montana

       For Appellee:

              Terrance L. Toavs, Law Offices of Terrance L. Toavs, Wolf Point, Montana

Submitted on Briefs:  April 29, 2020

Decided:  September 15, 2020

Filed:

_____
                        Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellant Cindy Morrison (Cindy) appeals the post-judgment orders entered by the Fifteenth Judicial District Court that interpreted the parties' Marital Settlement Agreement (MSA) with regard to property issues, denied Cindy's motion for relief under § 40-4-253(4) and (5), MCA, and awarded Mark Swank (Mark) attorney fees for prevailing in the matter, and also as a Rule 11 sanction. We affirm in part and reverse in part.

¶3 The parties married on July 24, 1999, and separated 15 years later, in July 2014. There were no children of the marriage. Substantial litigation over the dissolution, which included application of the parties' prenuptial agreement, culminated in a lengthy mediation session. A spreadsheet listing properties, values, and allocation to the parties was utilized at the mediation. Seriatim revised versions of the spreadsheet were created during the mediation, but earlier versions were retained and referenced at a later hearing.

¶4 The mediation produced the MSA, which was filed with the court on August 22, 2017. The parties agreed the marital estate was valued at $1,825,400, and agreed to divide the estate equally, with each receiving $912,700. The parties also retained other properties that they agreed to treat as their separate, individual property, which were designated by words or letters designating them as separate, and whose values were not included in the

2

total value of the estate or the parties' individual shares. In an earlier version of the spreadsheet, the value of Mark's IRA, an Edward Jones account, had been correctly listed as $166,513.55, and designated as Mark's separate retirement property. The final version of the spreadsheet, denominated Exhibit A, deleted the letters in Mark's column that would further designate the account as his separate property, and incorrectly overwrote the value of the account to be only $142,633.33. This value was the amount from the account to be distributed to Cindy to compute her marital share of $912,700. The MSA stated that "[e]ach party acknowledges that he or she may be entitled to some right in the other's retirement plans. The parties agree that each is entitled to the sole and separate ownership of their respective retirement plans as allocated to them under Exhibit A." The MSA stated, "[t]he parties have agreed that the final division of the marital estate shall be in equal shares of $912,700.00 as shown on Exhibit A, including an equalization payment to Wife of $47,566.41, which Husband shall pay to Wife within 30 days of the date of this agreement."

¶5 The MSA also provided that the parties' "agreed disposition of the assets and liabilities is not unconscionable" and that "the parties waive the requirement for final declaration of disclosure." Regarding fees, the MSA provided, "[s]hould any action be commenced to enforce, modify, or interpret any provisions of this agreement, the successful party shall be entitled to reasonable attorney fees." After a hearing, the District Court issued Findings of Facts, Conclusions of Law, and Decree of Dissolution of Marriage, incorporating the MSA, on September 27, 2017.

¶6 In January 2018, Cindy filed a motion to enforce the MSA, contending she should receive the full balance of the Edward Jones IRA Account in the amount of $166,513.25,

3

from which she had received $142,633.33. Cindy argued that because no value had been allocated to Mark for the account on Exhibit A, and no letter designation existed, she was entitled to the entirety of the account. Cindy sought other relief that is not raised as an issue on appeal. Mark objected to Cindy's request, contending the omission of any input in his column of the spreadsheet regarding the IRA was merely a "scrivener's error" that occurred at the end of mediation, and that the full value should have been recorded as $166,513.25, with $142,633.33 allocated to Cindy. Mark also filed a counter motion for enforcement of the MSA regarding Cindy's post-settlement withdrawal of funds from his account, for return of his personal and business property, and for Cindy's transfer of her stock in the family corporation. After a hearing, the District Court issued an order finding the full amount of the IRA account had been properly disclosed, that if Cindy received the additional amount she would receive more than she had agreed to in the MSA, and that she had "received the exact portion of the Edward Jones account she was to receive as part of the settlement." Cindy had also sought payment of an amount that Mark had offset from an account that was to be transferred to Cindy. The District Court found that payment was appropriate, but that Mark's action was "not contemptuous," because he had not been informed of her intention to withdraw sums from this account. The District Court found that Cindy's refusal to return Mark's property and to transfer stock in the family corporation "were willful and in violation of the MSA and decree of dissolution." The District Court thus denied Cindy's motion and granted Mark "reasonable attorney fees and costs incurred in connection with the cross motions [to enforce the MSA.]"

4

¶7 In December 2018, Cindy filed a motion for relief under § 40-4-253(4) and (5), MCA, claiming Mark had failed to disclose three contracts for pea sales prior to the divorce hearing, and that Mark had switched the USDA "operator" designation on 4 tracts of land from the parties' farming corporation to Mark individually, which she claimed was a violation of the temporary restraining order in effect at the time for estate transactions. Cindy asked that she be paid the sum of $26,010.82 as a statutory remedy for the failure to disclose, or that the MSA be set aside. Cindy argued these actions constituted perjury on Mark's part. Mark countered that the pea crops were sold at a loss, were transactions in the ordinary course of the operation of the farm that had occurred the day before mediation, and that they had been disclosed in the production disclosure and discussed during mediation. He also argued that changing the USDA operator designation did not violate the parties' TRO because this action did nothing to affect the title to the land or crops. Asserting Cindy's motion did not have "a good faith legal basis" or "factual basis," Mark requested she be sanctioned under Rule 11.

¶8 On July 1, 2019, the District Court denied Cindy's request to set aside the MSA or grant her request for monetary relief. About the pea sale contracts, the District Court found:

> [M]ark disclosed what he knew about the 2017 crop at mediation - that it would be a loss. When the figures were available, Mark presented the 2017 crop production and expense information at the dissolution hearing and was subject to cross examination. The two pea sales Cindy is questioning did not add any value to the marital estate because they were part of the 2017 crop which, the undisputed evidence shows, was fully disclosed.
>
> This is not a case where a piece of undisclosed property has suddenly come to light.

About the USDA designation, the District Court found that "Mark's change of operator did not conceal or dispose of any property." Concluding that Cindy's claims were either false or without support, the District Court granted Mark's motion for sanctions. Ultimately, the District Court granted fees in the amount of $4,733 as "reasonable fees" in prevailing on the MSA dispute, and $5,622.25 as a Rule 11 sanction for Cindy's motion for relief under § 40-4-253(4) and (5), MCA.

¶9 Cindy appeals the District Court's denials of her post-judgment motions and the award of attorney fees to Mark as a Rule 11 sanction and his defense of the MSA motion. Mark contends the District Court's decisions were not abuses of discretion. This Court reviews a district court's interpretation of law and application of statutes for correctness and findings of fact to determine whether the findings are clearly erroneous. *Byrum v. Andren*, 2007 MT 107, ¶ 14, 337 Mont. 167, 159 P.3d 1062. "[W]e review de novo the district court's determination that the pleading, motion or other paper violates Rule 11. We review the district court's findings of fact underlying that conclusion to determine whether such findings are clearly erroneous. If the court determines that Rule 11 was violated, then we review the district court's choice of sanction for abuse of discretion." *Byrum*, ¶ 19.

¶10 *1. Did the District Court incorrectly interpret the MSA by declining to order that the entirety of the IRA be distributed to Cindy?*

¶11 The MSA was incorporated into the final decree of dissolution and, as acknowledged by the parties, constituted an equitable division of the parties' marital estate. Although the parties acknowledged in the MSA that each party "may be entitled to some right in the other's retirement plans," the District Court found that parties agreed to receive

6

the total amount of $912,700 in equal distributions, and that the Exhibit A spreadsheet allocated the precise amount, $142,633.33, from the IRA for Cindy to receive her portion. The parties testified that this total figure was the general intent of the MSA. We agree with the District Court that there was no ambiguity in the MSA, or necessity of looking beyond the plain meaning of the writing, § 28-3-204, MCA, despite the incorrectly stated total value of $142,633.33, and the alteration of the designation as Mark's account. We conclude the District Court's findings of fact were not clearly erroneous and that it correctly concluded Cindy was not entitled to the entirety of the account.

¶12    *2. Did the DC err by awarding attorney fees to Mark on his counter motion to enforce the parties' MSA?*

¶13    The District Court awarded "Mark's reasonable attorney fees and costs incurred in connection with the cross motions [to enforce the MSA.]" The District Court did not further articulate the legal basis for the fee award, but Paragraph 9 of the MSA clearly provides that, "[s]hould any action be commenced to enforce, modify, or interpret any provision of this agreement, the successful party shall be entitled to reasonable attorney fees, in addition to any other remedy provided in this agreement, and the court shall award the same." Cindy argues the District Court abused its discretion by determining Mark was the prevailing party, and entitled to attorney fees, because the order also included a directive for Mark to restore funds that he offset from Cindy's account. Mark responds the District Court correctly found he had not violated the MSA, and that no one factor can be considered determinative for identifying the prevailing party, citing *In re Marriage of Herbert,* 255 Mont. 69, 72, 840 P.2d 584, 586 (1992).

7

¶14 At bottom line, the District Court denied Cindy's motion for enforcement of the MSA, and granted Mark's. Although Mark was ordered to replace funds in Cindy's account, the District Court found his actions were not contemptuous and were based on a lack of notice. In contrast, Cindy's actions were found by the District Court to be "willful and in violation of the MSA." We conclude the District Court did not err in granting an award of fees pursuant to the fee provision of the MSA.[1]

¶15 *3. Did the District Court err by denying Cindy's motion for relief pursuant to § 40-4-253(4) and (5), MCA?*

¶16 "[T]he parties must completely disclose money and assets accumulated during the marriage." *In re Marriage of McFarland*, 240 Mont. 209, 213, 783 P.2d 409, 411 (1989). Further, § 40-4-253(4) and (5), MCA, provide:

> ¶17 (4) The failure of a party to disclose an asset or liability *on the final declaration of disclosure* is presumed to be grounds for the court, without taking into account the equitable division of the marital estate, to award the undisclosed asset to the opposing party or the undisclosed liability to the noncomplying party.
>
> ¶18 (5) In addition to any other civil or criminal remedy available under law for the commission of perjury, *the court may set aside the judgment, or part of the judgment*, if the court discovers, within 5 years from the date of entry of judgment, *that a party has committed perjury in the final declaration of disclosure*. [(Emphasis added)].

Cindy argues that Mark's failure to disclose the pea sale contracts and the change in operator status violated this provision, as well as the parties' economic TRO.

---

[1] Before the District Court, Cindy argued the attorney fee affidavit provided by Mark's attorney did not represent reasonable or realistic hourly rates or figures. Cindy does not raise those arguments here and we affirm solely on the District Court's conclusion that Mark was the prevailing party.

¶19    As the District Court found, the pea sales were disclosed in the mediation, and the MSA was thereafter entered, in which the parties acknowledged there had been a full disclosure and provided that the parties "waive the requirement for final declarations of disclosure." Nonetheless, as the District Court found, Mark testified concerning the sales during the dissolution hearing that led to approval of the MSA, and he was subject to cross examination.

¶20    We conclude the District Court did not err by holding that Cindy had not met her burden to demonstrate entitlement to relief. Disclosing the existence of the pea crop sales rather than the contracts themselves, as Cindy argues, and changing the USDA operator designation to Mark personally, are distinctions that have not been shown to be prejudicial to Cindy. Cindy failed to show that Mark "knowingly ma[de] a false statement under oath or equivalent affirmation" necessary for relief under § 40-4-253(5), MCA, or otherwise concealed assets from her.

¶21    *4. Did the District Court err by awarding attorney fees to Mark as a Rule 11 sanction?*

¶22    The District Court granted Mark's motion for sanctions under Rule 11 at the May 31, 2019, motions hearing, and later issued a written order summarily finding that Cindy's arguments in her motion for relief were either false or unsupported. M. R. Civ. P. 11. While the District Court did not identify the specific subsection of Rule 11 violated by these arguments, Mark's motion argued that Cindy had violated Rule 11(b)(2) which requires that in every pleading: "the claims, defenses, and other legal contentions are

warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." M. R. Civ. P. 11(b)(2).

¶23 Generally, we give district courts "wide latitude to determine whether the factual circumstances of a particular case amount to frivolous or abusive litigation tactics." *Boland v. Boland (In re Estate of Boland)*, 2019 MT 236, ¶ 51, 397 Mont. 319, 450 P.3d 849. However, the District Court imposed a significant sanction upon a brief general finding that Cindy's allegations were false or wholly unsupported. It appears from our de novo review of the record of this complex agricultural marital estate that Cindy's allegations were not so wholly without basis as to merit the imposition of a Rule 11 sanction.

¶24 We reverse only the portion of the judgment related to sanctions levied against Cindy under Rule 11, as discussed above, and remand for entry of an amended order to reflect that change. We affirm the remainder of the District Court's orders, including the fee award for the proceeding interpreting the MSA.

¶25 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶26 Affirmed in part, reversed in part, and remanded for entry of an amended judgment.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR