

DA 06-0397

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 10N

GEORGE R. HORN and ELVA HORN,
Husband and Wife, and BRANDY CROWE,

      Plaintiffs and Appellants,

  v.

JOSEPH E. LITTLE,

      Defendant and Appellee.

APPEAL FROM:   District Court of the Twentieth Judicial District,
                 In and For the County of Sanders, Cause No. DV 02-65
                 Honorable C. B. McNeil, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          William A. Douglas, Douglas Law Firm, Libby, Montana

      For Appellee:

          Amy N. Guth, Attorney at Law, Libby, Montana

                      Submitted on Briefs:  April 11, 2007

                               Decided:  January 15, 2008

Filed:

_____
                           Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 The Twentieth Judicial District Court, Sanders County, held a bench trial in this action by George R. Horn, Elva Horn and Brandy Crowe (Horns) against Joseph E. Little (Little) for damages to a water delivery system. The District Court subsequently entered findings of fact, conclusions of law and judgment that the Horns take nothing for their complaint. The Horns appeal and we affirm.

¶3 We restate the issues as follows:

¶4 1. Did the District Court commit reversible error in refusing to admit testimony regarding out-of-court statements by Little's adult son and daughter-in-law?

¶5 2. Did the District Court err in concluding the Horns failed to prove Little breached any duty owed to them?

¶6 3. Are the Horns entitled to a new trial because the District Court materially restricted their presentation of evidence and then ruled against them on grounds they did not meet their burden of proof?

BACKGROUND

¶7    This case involves a gravity-fed water delivery system installed between 1976 and 1980 by Ronald G. Bierer on land he owned with his wife, Brenda K. Bierer, in Sanders County, Montana.  The water source for the water delivery system is a stream situated on United States Forest Service land.  During the spring and summer, the water in both the stream and the water delivery system is littered with debris, mud, dirt and even small animals.

¶8    Pipes transport water from the stream for approximately 2,000 feet to a pelton wheel hydroelectric turbine generator in an above-ground structure sometimes called "the valve shed."  From there, buried water lines transport water to a lake and several buildings, including a large store building, on different parts of the property owned by the Bierers.

¶9    In August of 1980, the Bierers sold the western portion of their property, including the large store building, to Sam Bouras, Robert Guilfoyle, Jr., and Robert Guilfoyle, Sr. The Horns are successors in interest to Bouras and the Guilfoyles.

¶10    In 1983, Brenda K. Bierer sold the remainder of the property formerly owned by herself and Ronald G. Bierer to Little.  The valve shed sits on this part of the property, and the water delivery system passes through this property on its way to the Horns' property.  In 1998, Little sold his property to his son and daughter-in-law, Wayne and Sharon Little, by contract for deed.  Wayne and Sharon defaulted, and ownership returned to Little in 2002.

¶11     In July of 2002, the Horns filed a complaint alleging that, during the summer of

3

2001, Little and Wayne Little had cut off the original water delivery system to the Horns' land and building, and substituted a water delivery system from a lower elevation in the stream, which included old rusty pipe. According to the Horns, these acts resulted in drastically reduced water pressure and water quality to their property.

¶12 The sole issues of fact set forth by the Horns in the pretrial order were what acts, if any, were committed by Little that resulted in the damages claimed by the Horns, and what damages they sustained. The issues of law set forth by the Horns for trial were whether they have a 10-foot wide easement across Little's land, whether they are entitled to a new and independent easement for installation of an independent water delivery system, and whether they are entitled to recover as damages the "costs of location and installation of the new pipeline easement."

¶13 In its findings of fact, conclusions of law and judgment, the District Court found that, although neither party had introduced any evidence of a written conveyance of a water right, the Horns had a domestic use right to 4½ gallons of water per minute from the stream, by mesne conveyance from Guilfoyle. The court also found that the Horns held a 10-foot wide easement over the water delivery system on Little's land, with the right to maintain and repair. The court determined, however, that the Horns provided no evidence of a conveyance to their predecessors or themselves of any ownership interest in the water delivery system from the point of diversion in the stream to the point at which the water delivery system enters their property. Similarly, the court determined the Horns presented no evidence of any covenant or agreement by Little or his predecessors to supply any water or guarantee any quantity or quality of water to the Horns or their

4

predecessors in interest.

¶14 The District Court concluded the Horns had failed to establish that (1) Little owed them a duty to provide any quantity or quality of water to them, (2) Little ever interfered with their easement or their right to maintain and repair the water delivery system, or (3) Little ever hooked up a secondary water delivery system to harm them. The District Court entered judgment that the Horns take nothing from Little. The Horns appeal.

STANDARDS OF REVIEW

¶15 Our standard of review of a district court's evidentiary rulings is whether the court abused its discretion. For an abuse of discretion in an evidentiary ruling to be the basis for a new trial, the court's error must be so significant that it materially affects the substantial rights of the appellant. *McGregor v. National R.R. Passenger Corp.*, 284 Mont. 178, 182, 943 P.2d 1269, 1271 (1997) (citation omitted).

¶16 We review findings of fact by a district court sitting without a jury to determine if the court's findings are clearly erroneous. *See* M. R. Civ. P. 52(a). Findings are clearly erroneous if unsupported by substantial credible evidence, if the district court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. In determining whether substantial credible evidence supports the district court's findings, we view the evidence in the light most favorable to the prevailing party. We review a district court's conclusions of law to determine whether they are correct. *Byrum v. Andren*, 2007 MT 107, ¶ 14, 337 Mont. 167, ¶ 14, 159 P.3d 1062, ¶ 14 (citations omitted).

5

## ISSUE 1

**¶17  Did the District Court commit reversible error in refusing to admit testimony regarding out-of-court statements by Wayne and Sharon Little?**

¶18  The Horns claim the District Court erred in refusing to allow other witnesses to testify about out-of-court statements allegedly made by Wayne and Sharon Little.  The court refused to allow such testimony on hearsay grounds.

¶19  M. R. Evid. 801(c) defines hearsay as a statement, other than one made by the declarant while testifying at trial, offered to prove the truth of the matter asserted.  Under M. R. Evid. 801(d)(2)(C) and (D), neither a statement by a person authorized by a party to make a statement concerning the subject nor a statement by a party's agent concerning a matter within the scope of the agency is hearsay.

¶20  The District Court allowed George Horn to testify that Little told him Wayne and Sharon were his water system operators.  George Horn did not testify—and no other witness testified—that Little stated Wayne and Sharon were Little's agents.  In any event, while the Horns contend other witnesses could have testified to "material statements made by Wayne and [Sharon] . . . concerning the water system," they made no offer of proof regarding the substance of those statements or their relevance in the District Court.  In addition, as the District Court noted, the Horns could have subpoenaed Wayne and Sharon, who were on the Horns' witness list.  The Horns elected not to call either.

¶21  The testimony they would like to have admitted is not hearsay, the Horns contend, because they wanted to impeach Wayne's credibility with the "inconsistency" that he "repeatedly" told George Horn that he "was a [Navy] SEAL" when, in his deposition, he

6

said he was a SEAL instructor. The Horns did not offer this explanation in response to hearsay objections in the District Court, and they advance no authority under which they would have been entitled to impeach Wayne in this fashion in advance of his testimony and cross-examination.

¶22 We hold the District Court did not commit reversible error by refusing to allow other witnesses to testify regarding out-of-court statements by Wayne and Sharon Little.

ISSUE 2

¶23 **Did the court err in concluding the Horns failed to prove Little breached any duty owed to the Horns?**

¶24 We begin by pointing out that this is not a dispute over whether the parties hold water rights or the seniority of their water rights pursuant to Title 85, Ch. 2, MCA. The District Court found the Horns held a water right and an easement to maintain and repair the existing water delivery system. Those findings are not in dispute.

¶25 The Horns assert the District Court erred in "finding and concluding that [their] water right was not protected," "finding that [Little] was not responsible for the damages to Horns' water system," and "finding that [Little] did not damage Horns' water system." We observe that all three of the Horns' assertions misstate the District Court's findings of fact; we review only findings which were actually made. *See Madison Addition Architectural Committee v. Youngwirth*, 2000 MT 293, ¶ 17, 302 Mont. 302, ¶ 17, 15 P.3d 1175, ¶ 17 (citation omitted).

¶26 The Horns further state the District Court "obviously misspoke" in concluding they failed to introduce evidence that Little hooked up a secondary water system to harm

7

them.  In this regard, the Horns allege that Wayne Little altered the water delivery system on Little's land in July of 2001.   George Horn testified he first saw the second, lower-elevation diversion from the creek—which the Horns refer to as "the secondary water system"—in the spring of 2002, and that he had never seen it before on the numerous occasions he had been there.  Wayne Little testified that what he did in July of 2001 was to repair damages from a catastrophic break in the valve shed.   He testified that he had first connected the lower-elevation diversion from the creek in the 1980s, with the knowledge of Guilfoyle, the Horns' predecessor in interest.  The Horns did not call Guilfoyle as a rebuttal witness to contradict this testimony, nor do they challenge the court's findings in this regard.

¶27    At any rate, although the Horns state this is an action for "mischievous interference," they offer no tort, contract, jurisprudential or statutory basis under which Little had a duty to supply them with water through the existing water delivery system on his land or at all, or to ensure that his use of the water delivery system on his property did not result in the deposit of debris into the connecting pipes on their property.   The Warranty Deed by which Guilfoyle transferred property to the Horns includes "a 10 foot wide easement over the existing pipeline, supplying water to the above-described premises . . . to the point where the water is diverted from U.S. Forest Service property, with the right to maintain and repair said pipeline."  The Horns produced no evidence that they had an ownership interest in the water delivery system on Little's property or on Forest Service property.  The District Court found "[t]hat the Plaintiffs produced no evidence of any covenant or agreement by [Bierer or Little] to supply any water or to

8

guarantee any quantity or quality of water to Plaintiffs or their predecessors in interest." The Horns do not challenge this finding, the record supports it and the finding is not otherwise clearly erroneous.

¶28 The court concluded the conveyance of a water right to the Horns did not include any agreement or covenant by Bierer to deliver any quantity or quality of water to the Horns. The court also concluded "the [Horns] failed to prove any breach of any duty owed by [Little] to [Horns]."

¶29 On this record, the District Court's conclusions of law are correct. We hold that the Horns failed to prove a breach of any duty Little owed them.

ISSUE 3

¶30 **Are the Horns entitled to a new trial because the District Court materially restricted their presentation of evidence and then ruled against them on grounds they did not meet their burden of proof?**

¶31 During the second day of the Horns' case, they were attempting to introduce an exhibit consisting of particles retrieved from the water taps at the large store building on their property. The District Court interrupted:

> Counsel, quit beating this thing to death. It's pretty obvious to the Court that the changes made by the defendant or by his son caused the pollution and this sediment in the water system. Now, how many more of these exhibits do you need to show the Court before you think I understand that picture?

The Horns' counsel responded that he wanted to introduce the exhibit into evidence and then have his expert witness conduct tests for lead in them. The court allowed him to do so.

¶32 The Horns contend that the District Court's statement constitutes taking "judicial

9

notice of the facts that were the basis of Horns' suit and declared them to be true." Stated differently, they claim, "[e]ssentially, the court granted summary judgment that those facts were true." The Horns' counsel states that, based on this "and the other [unspecified] *sua sponte* rebukes the court directed towards [him]," "[he] sharply truncated his planned cross-examination and sharply curtailed most of his planned rebuttal."

¶33 Our reading of the transcript does not support the Horns' argument. The court's statements set forth in ¶ 31 clearly reflected irritation with what it apparently perceived as unduly extended evidence. Indeed, the statements can readily be interpreted as the District Court's agreement with the Horns' causation theory. As discussed above, however, the Horns have identified no theory under which Little breached any obligation to them via acts of his alleged agents. Absent a breach, no amount of evidence that Little's actions caused the Horns damage would change the result in this action. Therefore, we conclude the District Court's comments, while perhaps unwise, do not constitute grounds for a new trial.

¶34 In this regard, the Horns also reference the District Court's remarks after their counsel elicited admissions from Wayne Little about a number of profane and threatening remarks he made to the Horns' expert witness about the Horns. The court interrupted, "Counsel, don't you think I have a pretty good idea about how that conversation went? . . . Get on to your next line of questioning. . . . You've insulted me enough." In his appellate brief, the Horns' counsel states the District Court's remarks caused him to truncate his planned cross-examination and rebuttal. Counsel does not specify what he

10

had intended to do. Nor did he object or make an offer of proof in the trial court. We conclude the District Court's comment is not grounds for a new trial.

¶35    Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ JOHN WARNER
/S/ BRIAN MORRIS

Justice Patricia O. Cotter Concurs.

¶36    I concur with the decision of the Court, but write separately to state it was difficult to reach this position, given what occurred in the District Court during the plaintiffs' case-in-chief.

¶37    Horns argued at trial that Little had a duty to refrain from affirmatively causing damage to their water delivery system. In this connection, they sought to prove that the changes made to the system by Little caused them harm. It was during this attempt at proof that the District Court made the comments the Court reproduces at ¶ 30 of its Opinion, to wit, in part: "It's pretty obvious to the Court that the changes made by the defendant or by his son caused the pollution and this sediment in the water system." I

agree with Horns—this comment does indeed suggest that the Court had already concluded that Horns had sufficiently proved this point, and no further evidence was needed. In fact, the District Court's comments would lead any attorney to quickly change course, and very much to the detriment of the client's case should the court ultimately conclude, as happened here, that the plaintiffs failed to carry their burden of proof on the very issue the court addressed in its intemperate comments.

¶38 Had the Horns presented a viable theory for recovery of damages from the defendants, I would be arguing strongly for a reversal on the sole basis of the court's comments. However, I believe this Court is correct—all theories advanced by the Horns fail because Little had no duty, contractual or otherwise, to provide them with a particular quality or quantity of water. While Horns may have enjoyed a particular level of water supply prior to the alterations to the system, this did not, under any theory advanced by Horns, elevate their receipt of water to a protectable interest beyond that found to exist by the District Court (Opinion, ¶ 12), such as would justify an award of damages. This being so, a new trial would not change the end result. Therefore, I reluctantly concur with the Court's conclusion that the District Court's comments do not, under these circumstances, provide grounds for a new trial.

/S/ PATRICIA COTTER

Justice James C. Nelson joins in the Concurrence of Justice Patricia O. Cotter.

/S/ JAMES C. NELSON

12