No. 00-122

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 293

302 Mont. 293

15 P.3d 1175

MADISON ADDITION

ARCHITECTURAL COMMITTEE,

Plaintiff and Appellant,

v.

BILL YOUNGWIRTH,

Defendant, Respondent

and Cross-Appellant.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

Honorable Mike Salvagni, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Wayne Jennings, Angel Law Firm, Bozeman, Montana

For Respondent:

Donald E. White, Bozeman, Montana

Submitted on Briefs: June 15, 2000
Decided: November 28, 2000

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶1 The Madison Addition Architectural Committee brought this action in the Eighteenth Judicial District Court, Gallatin County, to enjoin Bill Youngwirth from maintaining a fourth apartment in his multi-family building in violation of restrictive covenants. Although the Committee prevailed in District Court, it appeals the court's failure to assess sanctions against Youngwirth. Youngwirth cross-appeals. We affirm.

¶2 The issues are:

¶3 1. Did the District Court err in refusing to impose Rule 11, M.R.Civ.P., sanctions?

¶4 2. Did the court err in failing to find that the enforcement of covenants against Youngwirth constituted selective and inequitable enforcement?

¶5 The Madison Addition Architectural Committee is a committee of property owners established by the protective covenants of the Madison Addition to the town of West Yellowstone, Montana. Youngwirth owns a 9,500-square foot lot in the Madison Addition. The Committee approved Youngwirth's plans to construct a building on his lot consistent with a covenant requiring a minimum lot size for multi-family dwelling units of 3,000 square feet per living unit. Youngwirth constructed a triplex.

¶6 Youngwirth rented out two units in the triplex and lives in the third. He admits that since 1995 he has also rented out the basement of the unit in which he lives. The basement contains a bedroom, bathroom, and combination kitchen and living room. The upstairs unit in which Youngwirth lives also has a kitchen, bedrooms, bathrooms, and a living room. Entry to the basement unit may be attained through a garage, without passing through Youngwirth's living unit.

¶7 Beginning in 1996, the Committee and the Madison Addition's owners association sent a series of letters to Youngwirth alleging that in renting out the basement of his unit, he was maintaining four "dwelling units" on his property and thus violating the density zoning provisions in the restrictive covenants. Youngwirth disagreed. The matter eventually went to trial, where Youngwirth argued that even if he was in violation of the covenants, others were also in violation but were not being held to compliance like he was.

¶8 The District Court noted in its conclusions of law that the Madison Addition's protective covenants define "dwelling unit" as "a building or portion thereof providing separate cooking, eating, sleeping, and living facilities for one family." The court concluded that the restrictive covenants were clear and unambiguous and that Youngwirth's construction and rental of the basement unit in his building constituted a violation of the covenant providing that the maximum number of dwelling units on a lot the size of his was three. Stating that Youngwirth's claim of selective enforcement of the covenants was not supported by the evidence, the court granted a permanent injunction prohibiting Youngwirth from maintaining a fourth apartment in his building.

Issue 1

¶9 Did the District Court err in refusing to impose Rule 11, M.R.Civ.P., sanctions?

¶10 Rule 11, M.R.Civ.P., provides:

> **Rule 11. Signing of pleadings, motions, and other papers -- sanctions.** Every pleading, motion, or other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. A party who is not represented by an attorney shall sign the party's pleading, motion, or other paper and state the party's address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading,

motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

This Court has stated that Rule 11 provides two grounds for sanctions: a pleading or other paper which is not well-grounded in fact or warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; or a pleading or other paper which is interposed for an improper purpose such as harassment, delay, or increasing the cost of litigation. *D'Agostino v. Swanson* (1990), 240 Mont. 435, 445, 784 P.2d 919, 925. This Court's standard of review of a decision on whether to impose Rule 11 sanctions is a combined standard: whether the trial court's findings of fact are clearly erroneous and whether its conclusions constitute an abuse of discretion. *D'Agostino*, 240 Mont. at 446, 784 P.2d at 926.

¶11 The Committee argues on appeal that Youngwirth must have known that his Answer to the Complaint contained false denials and that his answers to the Plaintiffs First Discovery Requests and the positions he took in the Pretrial Order were also false. In his Answer to the Complaint, Youngwirth denied that with the addition of the basement unit, his building exceeded the maximum number of units allowed on the property. The Committee asserts that it was forced to go through discovery and trial in a case which should have been resolved at the pleading stage, and that Youngwirth should be sanctioned by being ordered to pay the Committee's reasonable attorney fees.

¶12 Youngwirth admits that in his Answer to the Complaint, he denied having four dwelling units on his property, which in hindsight seems clearly untrue in light of the covenants' definition of a "dwelling unit." However, Youngwirth's answer to the complaint also alleged that the Committee had failed to enforce restrictive covenants as to other structures in the Madison Addition and had thereby waived or forfeited its right to enforce the covenants as to him. By the time the Pretrial Order was entered, Youngwirth's primary argument had distilled to one that the Committee had failed to enforce the subdivision covenants as to numerous other owners in the subdivision and therefore lost the right to enforce them against him. In support, Youngwirth introduced at trial numerous photographs which he had taken of other properties in the subdivision, showing what he

claimed were uncorrected violations of the subdivision's restrictive covenants.

¶13 In denying the motion for Rule 11 sanctions, the District Court stated,"[t]he Defendant correctly asserts that the Pre-Trial Order supersedes the pleadings," citing Rule 16(e), M.R. Civ.P., and *Benson v. Heritage Inn, Inc.*, 1998 MT 330, ¶ 17, 292 Mont. 268, ¶ 17, 971 P.2d 1227, ¶ 17. The court then stated, "While Plaintiff prevailed, Defendant's defense was reasonable." We agree. Further, while the Committee asserts that this reasoning will unfairly allow parties to make untrue denials in their pleadings but avoid Rule 11 sanctions if they change to a defensible position at trial, we conclude that whether this has occurred is a factual matter best suited for evaluation by the trial court in deciding a Rule 11 sanction request.

¶14 The District Court did not delineate findings and conclusions as to the post-trial sanction motion. We conclude that its decision does not constitute an abuse of discretion. We therefore affirm the court's denial of Rule 11 sanctions.

Issue 2

¶15 Did the court err in failing to find that the enforcement of covenants against Youngwirth constituted selective and inequitable enforcement?

¶16 In his cross-appeal, Youngwirth does not challenge any specific findings made by the District Court. Instead, he points out that there was evidence in the record which would support findings which were not made.

¶17 The existence of evidence which might support a finding does not require a district court to make that finding. *Yellowstone Basin Properties, Inc. v. Burgess* (1992), 255 Mont. 341, 352, 843 P.2d 341, 348. Our standard of review is, rather, whether the findings which *were* made are clearly erroneous. This standard encompasses not only a determination of whether the findings are supported by substantial evidence, but also whether the trial court has misapprehended the effect of the evidence and whether this Court is left with a definite and firm conviction that a mistake has been committed. *Interstate Production Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287.

¶18 At trial, Youngwirth introduced a series of photographs he had taken, showing alleged violations of the Madison Addition restrictive covenants. The photographs showed items,

including garbage, mobile homes, and snowmobiles, stored on property in the Madison Addition, which Youngwirth contended violated the restrictive covenants. Youngwirth also introduced into evidence floor plans and testimony about another multiplex building in the Madison Addition which, he pointed out, housed tenants at a higher density than did his building.

¶19 The District Court found that Youngwirth acknowledged that the Committee attempted in numerous instances to enforce the covenants against other violators. It found that the Committee's treatment of Youngwirth was consistent with the treatment given to others within the subdivision who had violated the provisions of the covenants. The court further found that all of the violations claimed by Youngwirth as evidence of lack of diligence or selective enforcement by the Committee had either been addressed by the Committee or the Board of Directors of the Association, or those violations were so fleeting in nature that enforcement was difficult if not impossible.

¶20 Having reviewed the record, we have determined that the District Court's findings are supported by substantial evidence and are not otherwise clearly erroneous. We hold that the District Court did not err in failing to find that the enforcement of covenants against Youngwirth constituted selective and inequitable enforcement.

¶21 We affirm the decision of the District Court.

/S/ J. A. TURNAGE

We concur:

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

Justice W. William Leaphart, dissenting.

¶22 I dissent from issue one and concur with issue two.

¶23 The Court affirms the denial of Rule 11, M.R.Civ.P., sanctions based upon the District

Court's rationale that, although the pleadings may have been in violation of Rule 11, the position taken by Youngwirth in the Pretrial Order was reasonable and not in violation. Thus, since the Pretrial Order supersedes the pleadings, sanctions are not in order. I disagree. In unequivocal terms, Rule 11 states that if a "pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall impose* upon the person who signed it" an appropriate sanction. (Emphasis added.) The clear language of the Rule does not allow for any "safe harbor" interpretation whereby a party or attorney who has signed pleadings or motions in violation of the Rule can escape the consequences by adopting a "reasonable" position in the final pretrial order. One of the stated purposes of Rule 11, M.R.Civ.P., is to prevent "unnecessary delay or needless increase in the cost of litigation." Most of the cost and time associated with litigation is expended prior to the signing of the pretrial order, during the investigative, pleading and discovery stages. If Rule 11 is to have any teeth, its terms must be applied to proceedings leading up to the pretrial order. If litigants are allowed to violate Rule 11 with impugnity prior to the pretrial order, Rule 11's goals of containing costs and delay are completely defeated.

¶24 I dissent.

/S/ W. WILLIAM LEAPHART