DA 07-0538

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 231

GOOD SCHOOLS MISSOULA, INC.,

  Plaintiff and Appellant.

 v.

MISSOULA COUNTY PUBLIC SCHOOL DISTRICT
NO. 1, a political subdivision of the state of Montana,
LOYOLA SACRED HEART HIGH SCHOOL
FOUNDATION, a Non-Profit Corporation,
ROSEMARY HARRISON, JOE TOTH, SCOTT BIXLER,
TONI REHBEIN, and JENDA HEMPHILL,

  Defendants and Appellees.

APPEAL FROM:  District Court of the Fourth Judicial District,
      In and For the County of Missoula, Cause No. DV-2006-306
      Honorable Ed McLean, Presiding Judge

COUNSEL OF RECORD:

  For Appellant:

    Roy H. Andes, Attorney at Law, Helena, Montana

    Jim Wheelis, Attorney at Law, Helena, Montana

  For Appellees School District No. 1, Rosemary Harrison, Joe Toth, Scott Bixler,
  Toni Rehbein and Jenda Hemphill:

    Elizabeth A. Kaleva, Attorney at Law, Missoula, Montana

  For Appellee Loyola Sacred Hart High School Foundation:

    Perry J. Schneider, Milodragovich, Dale, Steinbrenner & Binney, P.C.,
    Missoula, Montana

Submitted on Briefs: May 14, 2008

Decided: July 1, 2008

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Good Schools Missoula, Inc. (GSM) is a Montana non-profit membership corporation organized for the purpose of improving public schools in Missoula, Montana. Its members include persons who pay property taxes in Missoula County and have children who attend schools in Missoula County Public School District No. 1 (District). GSM appeals the dismissal of its complaint in the District Court of the Fourth Judicial District, Missoula County, and the award of attorney's fees in favor of the above-named appellees. We affirm the dismissal of GSM's complaint, vacate the award of attorney's fees and remand for further proceedings consistent with this Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    In April of 1998, the Board of Trustees of Missoula County Public School District No. 1 (Board) adopted a policy for the District which authorized it to dispose of sites, buildings, or any other real or personal property which are, or are about to become, abandoned, obsolete, undesirable, or unsuitable for school purposes. The policy required the Board to pass a resolution, according to state statute, authorizing any sale and stating the reasons for its decision. If the resolution was adopted and its legality affirmed, the Board was then authorized to sell or dispose of the property in a reasonable manner determined to be in the best interests of the District.

¶3    The Roosevelt School (Roosevelt) was a public school located in the District. In 1999, the District voted to close the Roosevelt School and bus the students who attended Roosevelt to other schools in Missoula. In June 1999, the Board voted to authorize a five-year lease of Roosevelt to the the Catholic Diocese of Helena (Diocese). The

3

Diocese was affiliated with the Loyola Sacred Heart High School Foundation (Loyola), an organization which operated a private Catholic school in Missoula. Before the expiration of the lease, the Diocese approached the District about purchasing Roosevelt. In September 2004, the Board authorized a public referendum on whether to sell Roosevelt to the Diocese. On November 2, 2004, the majority of those who voted on the referendum voted in favor of the sale. On April 12, 2005, after the public vote, the Board authorized the sale of Roosevelt to Loyola and the Diocese, and the sale was completed on May 6, 2005.[1]

¶4 GSM claims that the Board and the District took a number of actions which were favorable to Loyola and the Diocese, and detrimental to its members. GSM maintains that the District and the Board did not give appropriate public notice of its initial deliberations and decision to lease Roosevelt to the Diocese, nor did it solicit bids from other interested parties who might have been interested in leasing Roosevelt. As a result of the Board's actions in Loyola's favor, GSM claims that Loyola was able to obtain the lease at a rate far below market value. Then, when the Diocese approached the District about purchasing Roosevelt, GSM asserts that the District and the Board continued to give Loyola and the Diocese highly favorable treatment. In addition to rushing through the passage of the resolution and approval of the referendum for the sale, GSM claims the Board and the District improperly renewed Loyola's lease, even though its term had already expired. It further claims that the Board and the District then hurriedly approved

---

[1] Appellees Rosemary Harrison, Joe Toth, Scott Bixler, Toni Rehbein, and Jenda Hemphill were all members of the Board who voted in favor of the sale of Roosevelt.

the sale of Roosevelt to Loyola without seeking sufficient appraisals or soliciting competitive bids. GSM claims that other interested parties submitted bids for Roosevelt which were higher than the one offered by Loyola and the Diocese, but the Board did not properly consider them.

¶5 After the sale, some members of the Missoula community were unhappy with the process and result of the transaction. On May 12, 2005, Linda Smith (Smith) and Molly Moody (Moody), two Missoula residents who live near Roosevelt, filed suit against the District and the Board, seeking to void the sale. Moody and Smith claimed the District had violated their right-to-participate and right-to-know under Article II, Sections 8 and 9 of the Montana Constitution in the processes and procedures it used to effectuate the sale. The District Court of the First Judicial District, Lewis and Clark County, rejected this argument, as well as others set forth in their complaint, and granted a motion to dismiss filed by the District and the Board in an order dated October 5, 2005.

¶6 On April 11, 2006, GSM filed their instant action against Loyola, the District, and the other above-named appellees in the Fourth Judicial District, Missoula County under the Uniform Declaratory Judgment Act (UDJA), Title 27, chapter 8, MCA. The complaint was amended on May 16, 2006. In the amended complaint, GSM sought a declaratory judgment that the sale of Roosevelt was void, as well as other forms of equitable relief against the District and those members of the Board who voted in favor of the sale. GSM alleged that the Board and the District were obligated to manage Roosevelt as trust property and observe both statutory and common law duties as trustees in its managing of the school, but breached these fiduciary duties to GSM's members in

5

its handling of the sale. GSM alleged that Roosevelt was sold to Loyola at a price significantly below market value, and at a price below other bids the Board had received from interested parties. GSM further alleged that the handling of the transaction and the final terms of its sale, breached the duty of undivided loyalty to GSM's members "in providing a sweetheart lease/purchase deal and procedure to Loyola." Additionally, GSM alleged that the Board breached the duties of prudence and accountability in regard to various aspects of its handling of the transaction, as well as Article X, Section 6 of the Montana Constitution which prohibits grants of benefits to sectarian schools.

¶7 On June 9, 2006, Loyola filed a motion to dismiss pursuant to M. R. Civ. P. 12(b)(6). Loyola asserted that GSM's claims against all the appellees in this matter were barred under res judicata and collateral estoppel, on account of the previous suit filed by Smith and Moody which had been dismissed in the First Judicial District. Loyola also argued GSM's claims were barred by the thirty-day statute of limitations for challenging a decision of a state agency under § 2-3-114, MCA. Additionally, Loyola argued that GSM lacked standing to file suit against Loyola. GSM opposed Loyola's motion, arguing that res judicata and collateral estoppel did not bar its claims, and that it did have standing to pursue them. Additionally, GSM argued that the matter was not controlled by the public participation statutes under Title 2, chapter 3, MCA, but was governed instead by general trust law as contained in Title 72, chapter 33 through 36, MCA. Accordingly, GSM argued that the proper statute of limitations for its claims was set forth in § 72-34-511, MCA, which gives the beneficiary of a trust three years after the discovery of the breach of a trust to bring an action against a trustee.

6

¶8 On February 27, 2007, the District Court granted Loyola's motion to dismiss GSM's complaint as against all the appellees. The District Court concluded that GSM did have standing to pursue its claims, but that GSM provided no authority showing that the actions of the Board were covered by the general trust codes. Instead, the District Court concluded that the statutes pertaining to public participation in governmental operations under Title 2, chapter 3, MCA, were controlling. The District Court ruled that because the sale of Roosevelt was closed on May 6, 2005, and GSM's complaint was not filed until April 11, 2006, the action against Loyola, the District, and the other named appellees was barred by the thirty-day statute of limitations set forth in § 2-3-114, MCA.

¶9 On March 6, 2007, Loyola filed a motion seeking attorney's fees from GSM pursuant to the District Court's inherent equitable powers as well as its equitable powers under § 27-8-313 of the UDJA. Loyola argued that the District Court should award attorney's fees in the amount of $11,762.50 and costs in the amount of $70.00, because GSM's suit against it was frivolous and presented an unreasonable claim. Loyola maintained that the suit was without merit and legal authority, especially in light of the previous order concerning the propriety of the sale of Roosevelt issued in the First Judicial District. Loyola argued that GSM advanced its argument to apply general trust law in an attempt to circumvent the limitations under § 2-3-114, MCA, and forced it to defend itself against a frivolous suit. Additionally, Loyola maintained that it had been named as a party for the sole purpose of bringing the case within the District Court's jurisdiction, as all of GSM's claims were directed solely at the District and the Board.

¶10    On March 12, 2007, the District and the other above-named appellees also filed a motion for attorney's fees in the amount of $25,863.75, as well as a bill of costs for $3,395.21.  In their motion, these appellees incorporated the arguments and claims advanced by Loyola.  Additionally, the District and other appellees argued that during discovery none of GSM's members who claimed damages could in fact substantiate any of those claims.

¶11    On August 6, 2007, the District Court granted both motions for attorney's fees and costs against GSM.  The District Court noted that GSM was not even incorporated until well after the thirty-day statute of limitations under § 2-3-114, MCA, had expired, and that GSM was simply trying to resurrect its claims against the appellees by arguing for the applicability of the general trust codes.  Additionally, the District Court noted that the proprietary of the sale of Roosevelt had already been litigated.  The District Court further observed that GSM made no factual allegations of wrongdoing against Loyola, and agreed that it had been named as a party defendant solely for the purpose of providing the District Court with jurisdiction.  Thus, it held that the suits against Loyola, the District and the other appellees were frivolous, without merit, and unreasonable, and awarded attorney's fees and costs pursuant to its authority under M. R. Civ. P. 11 and *Foy v. Anderson*, 176 Mont. 507, 580 P.2d 114 (1978) and its progeny.

¶12    GSM now appeals the District Court's orders granting Loyola's motion to dismiss the complaint as against all the appellees as well as the award of attorney's fees to all appellees.[2]  GSM presents the following two issues on appeal:

¶13    **Issue One:**  *Did the District Court err in granting Loyola's motion to dismiss?*

¶14    **Issue Two:**  *Did the District Court abuse its discretion in awarding attorney's fees against GSM?*

## STANDARD OF REVIEW

¶15    We review de novo a district court's ruling on a motion to dismiss under M. R. Civ. 12(b)(6).  *Plouffe v. State*, 2003 MT 62, ¶ 8, 314 Mont. 413, ¶ 8, 66 P.3d 316, ¶ 8.  We affirm a district court's decision granting a motion to dismiss "when we conclude that the plaintiff would not be entitled to relief based on any set of facts that could be proven to support the claim."  *Plouffe*, ¶ 8.  Whether a complaint states a claim for which relief can be granted is a question of law which we review for correctness.  *Plouffe*, ¶ 8.

¶16    In general, we review a district court's award of reasonable attorney's fees for an abuse of discretion.  *Chase v. Bearpaw Ranch Assn.*, 2006 MT 67, ¶ 15, 331 Mont. 421, ¶ 15, 133 P.3d 190, ¶ 15.  The reasonableness of attorney's fees should be assessed relative to the facts of each case, and the district court should consider a number of factors when deciding to grant an award of attorney's fees.  *Chase,* ¶ 38 (describing some of the factors to be considered by a district court when awarding reasonable attorney's fees).  Moreover, an evidentiary hearing is required before attorney's fees can be granted.

---

[2] In its briefs before this Court, GSM does not independently challenge the award of costs.

9

*Glaspey v. Workman*, 234 Mont. 374, 377-78, 763 P.2d 666, 668 (1988). We review a district court's imposition of sanctions under M. R. Civ. P. 11 under the following standard:

> [W]e review de novo the district court's determination that the pleading, motion or other paper violates Rule 11. We review the district court's findings of fact underlying that conclusion to determine whether such findings are clearly erroneous. If the court determines that Rule 11 was violated, then we review the district court's choice of sanction for abuse of discretion.

*Byrum v. Andren*, 2007 MT 107, ¶ 19, 337 Mont. 167, ¶ 19, 159 P.3d 1062, ¶ 19.

## DISCUSSION

¶17 **Issue One:** *Did the District Court err in granting Loyola's motion to dismiss?*

¶18 On appeal, GSM argues the District Court erred in granting Loyola's motion to dismiss by incorrectly concluding that the thirty-day statute of limitations set forth in § 2-3-114, MCA, applied to its claims. GSM argues that its claim falls under the general trust codes and is within the three year statute of limitations for actions against trustees set forth in § 72-34-511, MCA.

¶19 Loyola and the District maintain the District Court did not err in dismissing GSM's complaint. Loyola asserts that the District Court properly dismissed the complaint because res judicata and collateral estoppel barred GSM's claims and because the statute of limitations under § 2-3-114, MCA, and not the general trust codes, applies. The District adopts all of these arguments, but adds that the statutes applicable to this case are actually found in Title 20, chapter 6, part 6, MCA.

¶20 The District maintains that Title 20 contains specific provisions which govern the actions of both the Board and the District relative to this case. The District notes that § 20-6-603, MCA, specifically authorizes the trustees of a school district to acquire and dispose of sites and buildings owned by the school district. Additionally, the District points to § 20-3-324, MCA, and § 20-9-213, MCA, which both specifically relate to the powers, duties, and administrative responsibilities of the trustees of public school districts.

¶21 Notably, the District further argues that the statutes in Title 20 and accompanying administrative regulations provide a thirty-day statute of limitations which specifically applies to any court actions brought against the Board and the District. In support of this argument, the District first points to § 20-3-210(1), MCA, which provides in part as follows:

> **20-3-210. Controversy appeals and hearings.** (1) Except for disputes arising under the terms of a collective bargaining agreement or as provided under 20-3-211 or 20-4-208, the county superintendent shall hear and decide *all matters of controversy arising in the county as a result of decisions of the trustees of a district in the county. . . .* Except as provided in subsection (2), exhaustion of administrative remedies under this chapter *is required prior to filing an action in district court concerning a decision of the trustees*. (Emphasis added.)

The District then points to Admin. R. M. § 10.6.103 (1999), which provides in part as follows:

> (1) A person who has been aggrieved by a final decision of the board of trustees of a school district in a contested case is entitled to commence an appeal before the county superintendant.

> (2) A school controversy contested case shall be commenced by filing a notice of appeal with the county superintendent and the parties within 30

11

days after the final decision of the board of trustees of the school district is made. The date of filing shall be determined to be the date the notice is delivered to the county superintendent or, if mailed, the date the notice is deposited in the U.S. mail as evidenced by the postmark date. Notice of appeal shall be served on the parties by certified mail or personal delivery. Respondent shall file a written reply to the notice of appeal within 10 business days of receipt.

Admin. R. M. § 10.6.103 (1) and (2) (1999).

¶22 We agree with the District that the provisions of Title 20 apply to this case. Specifically, once a decision is made by the board of trustees of a school district that generates a controversy in the county, as occurred here, controversy appeals and hearings are governed by the provisions of § 20-3-210, MCA, and the accompanying administrative rules. However, we disagree with the District's contention that these statutes impose a thirty-day statute of limitations for the filing of a complaint in district court. Rather, as is evident from the language of § 20-3-210, MCA, and Admin. R. M. § 10.6.103 (1999) quoted above, a person aggrieved by an action of the board of trustees is obligated to first exhaust her administrative remedies by bringing her controversy before the county superintendent. It is this action before the county superintendent—and not an appeal to the district court—which must be commenced within thirty days of the decision of the board of trustees. A.R.M. § 10.6.103(2) (1999).

¶23 Consistent with § 20-3-210, MCA, we have held that claimants must exhaust their administrative remedies under this statute before filing a complaint or petition in district court which challenges the actions of school board trustees. *Canyon Creek Educ. Assn. v. Bd. Of Trustees, Yellowstone Co. Sch. Dist. No. 4*, 241 Mont. 73, 75, 785 P.2d 201, 203 (1990). There are limited exceptions to this rule in situations where state agencies have

been directly granted primary jurisdiction, where the matter is governed by a specific statute, or where a board of trustees has acted without or in excess of its jurisdiction. *Canyon Creek*, 241 Mont. at 75, 785 P.2d at 203 (citing *Throssell v. Bd. Of Trustees of Gallatin Co. Sch. Dist. No. 7*, 232 Mont. 497, 499-500, 757 P.2d 348, 349-50 (1988)). It is undisputed that GSM did not seek review of the controversy before the county superintendent before bringing this action in District Court. Moreover, GSM has not demonstrated that any of these three exceptions apply; therefore, it failed to exhaust its administrative remedy as required by law.

¶24 Accordingly, we affirm the District Court's dismissal of GSM's complaint, in spite of the fact that it erroneously concluded that the complaint was barred by virtue of the statute of limitations set forth in § 2-3-114, MCA. *Wells Fargo Bank v. Talmage*, 2007 MT 45, ¶ 23, 336 Mont. 125, ¶ 23, 152 P.3d 1275, ¶ 23 (stating that we will affirm a district court's decision even if it reaches the right result for the wrong reason). GSM failed to state a claim for which relief could be granted because it failed to exhaust its administrative remedies before pursuing relief in the District Court. Therefore, dismissal of its complaint under M. R. Civ. P. 12(b)(6) was not in error.

¶25 **Issue Two:** *Did the District Court abuse its discretion in awarding attorney's fees against GSM?*

¶26 GSM maintains that the District Court's order granting attorney's fees was incorrect because it turned on the conclusion that GSM's claim that the general trust code applied to the Board's action was wholly frivolous and without merit. GSM argues that its suit was brought as a reasonable attempt to expand existing law, even if this argument

13

is ultimately rejected. GSM argues that it raised different issues than those raised in previous suits concerning the sale of Roosevelt, and that in order to avoid sanctions under M. R. Civ. P. 11 it need only show that it made a good faith argument within its view of the law. In support of its claim, GSM points to our decision in *Dept. of State Lands v. Pettibone*, 216 Mont. 361, 702 P.2d 948 (1985), where we implied that a state agency which administers school trust lands is required to adhere to general fiduciary duties. *Pettibone*, 216 Mont. at 371, 702 P.2d at 954. Given *Pettibone* and other cases such as *Montanans for the Responsible Use of the School Trust v. State*, 1999 MT 263, 296 Mont. 402, 989 P.2d 800, and *Chennault v. Sager*, 187 Mont. 455, 610 P.2d 173 (1980), GSM argues it is not frivolous to argue that if general fiduciary duties apply to state trustees in other contexts, then the general trust code provisions, and the accompanying statute of limitations, could apply to the Board in this case as well.

¶27    In this connection, GSM also observes that the District Court did conclude it had standing to bring the suit, and that we should take this into consideration in determining whether its conduct was sanctionable under M. R. Civ. P. 11. Finally, GSM claims that, at a minimum, the sanctions under M. R. Civ. P. 11 must be remanded because the District Court failed to properly afford it due process and notice, in that no hearing was held prior to the issuance of the attorney's fee assessment.

¶28    Loyola and the District both maintain that M. R. Civ. P. 11 sanctions were warranted in this case. Loyola maintains the District Court properly exercised its equitable powers to make it whole as a consequence of having to defend itself against a frivolous and meritless suit. Loyola argues it was brought into this action solely for

14

purposes of obtaining jurisdiction, and that GSM's amended complaint is devoid of any allegations of wrongdoing against it. Because GSM sought relief under the UDJA, Loyola further argues the District Court acted within it equitable powers per § 27-8-313, MCA, which authorizes a district court to grant further relief in a declaratory judgment action whenever necessary or proper. The District and the other appellees also argue that the award of attorney's fees was appropriate and adopt the same arguments advanced by Loyola, but further point out that they were forced to spend significant resources during discovery in defense of this suit, in spite of the fact that the propriety of the Roosevelt sale had already been litigated.

¶29 GSM is correct in noting that a hearing is required before sanctions can be issued under M. R. Civ. P. 11. *Byrum*, ¶ 32. Moreover, a hearing is required before an award of reasonable attorney's fees is made pursuant to the district court's equitable powers. *Glaspey*, 234 Mont. at 377-78, 763 P.2d at 668. Thus, a remand of the award of attorney's fees is required so that a hearing can be held.

¶30 Because the District Court invoked both M. R. Civ. P. 11 and its equitable power in awarding sanctions, it is difficult to evaluate the propriety of sanctions on appellate review. In evaluating whether sanctions under M. R. Civ. P. 11 are justified, the district court is required to make appropriate findings and conclusions and hold a hearing under *Byrum*. Additionally, the reasonableness of an award of attorney's fees in general must be evaluated under the factors as set forth in *Chase*. *Chase*, ¶ 38. We agree with GSM that the District Court order granting attorney's fees does not adequately set forth an analysis under these factors, nor does it set forth the reasons for its award of fees under

15

M. R. Civ. P. 11 as required under *Byrum*. Thus, we must vacate the award of attorney's fees and remand for further proceedings.

## CONCLUSION

¶31    We affirm the District Court's grant of Loyola's motion to dismiss. We conclude that GSM failed to exhaust its administrative remedies before filing suit, and that its claim in District Court was barred. Therefore, albeit for an incorrect reason, the District Court reached the correct result in concluding that GSM failed to state a claim for which relief could be granted under M. R. Civ. 12(b)(6). We vacate the award of attorney's fees, and remand for further proceedings consistent with this Opinion.


/S/ PATRICIA COTTER


We concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS