

DA 12-0418

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 146

IN THE MATTER OF:
TRACEY L. MORIN,

        Appellant,

AS PART OF:
SARAH WEST, AUSRA WEST,
and JAMES WEST,

        Plaintiffs,

    v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DV 07-330/158
Honorable James A. Haynes, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Jonathan R. Motl, Morrison, Motl & Sherwood, PLLP, Helena, Montana

        For Appellee:

                Bradley J. Luck, Garlington, Lohn & Robinson, PLLP, Missoula, Montana

                        Submitted on Briefs:  April 3, 2013
                                    Decided:  June 4, 2013

Filed:

_____
                              Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      This case arose from civil litigation known as West v. State Farm, Cause DV-07-330, in the District Court of the Twenty-first Judicial District, Ravalli County. Tracey Morin, attorney at law, represented the West plaintiffs in that action. At the conclusion of the action the District Court, the Hon. James Haynes, imposed sanctions on Morin individually under M. R. Civ. P. 11, and Morin appeals.

¶2      On appeal Morin contends that the "depth and breadth" of the sanctions imposed upon her constituted an abuse of discretion. We affirm.

### PROCEDURAL AND FACTUAL BACKGROUND

¶3      In 2004 Sarah West was injured in a motor vehicle accident with a third party, and reached a settlement with that party's insurer for about $93,000. She then made a claim against her own insurer, State Farm, for underinsured motorist benefits of $75,000 under the West family's State Farm policy. State Farm paid $20,000 in benefits and then denied liability for additional payments.

¶4      In 2007 Morin filed a complaint against State Farm on behalf of Sarah for breach of contract under the State Farm policy. Morin later filed an amended complaint adding Sarah's parents Ausra and James West as plaintiffs and asserting additional claims for violation of the Montana Unfair Trade Practices Act, breach of the implied covenant of good faith and fair dealing, and punitive damages. In November 2008, attorney Paul Meismer appeared as co-counsel for the West plaintiffs in the litigation. Discovery proceeded in the case.

2

¶5 In late April 2009, Morin, on behalf of the West plaintiffs, moved the District Court to bifurcate the breach of contract claim from the tort claims against State Farm. The stated reasons were that the breach of contract claim was distinct from the tort claims, and that bifurcation would benefit all parties. In May 2009, attorney Meismer, with the express consent of the Wests, was allowed to withdraw from the case for health reasons.[1]

¶6 On June 5, 2009, Morin entered a written stipulation with the attorneys for State Farm to dismiss one of the tort claims, and to bifurcate the contract claim from the remaining tort claims. The parties' written stipulation provided that unless the Wests requested a revised scheduling order within 60 days of the final disposition of the breach of contract claims, the tort claims "shall be dismissed with prejudice." The District Court entered an order in accordance with the stipulation and stayed the action as to the tort claims. The order reflected the agreement in the stipulation and provided:

> A revised Scheduling Order shall be requested by Plaintiffs in relation to Counts Two and Four, if they desire, following the settlement or entry of final judgment on Count One. Plaintiffs shall make such request within 60 days of the settlement or final judgment on Count One *or the case (Counts Two and Four) shall be dismissed with prejudice*.

(Emphasis added.) The parties proceeded with discovery and preparation for trial on Count One, the contract-underinsured motorist claim.

¶7 On August 25, 2010, the day before the final pretrial conference on Count One and only weeks before the scheduled trial, Morin moved the District Court to dismiss Count

---

[1] On September 27, 2009, Paul Meismer, a respected and well-regarded member of the Montana Bar, died.

One without prejudice. The District Court held hearings on the motion (August 26 and 27, 2010), during which Morin stated that it was "financially impossible" for the Wests to proceed with two trials on the bifurcated claims.[2] State Farm objected to a dismissal without prejudice because the parties were on the verge of going to trial and had expended considerable effort and money to get to that point. The District Court denied the motion to dismiss without prejudice, and indicated that trial would proceed as scheduled on October 1, 2010.

¶8 Attorney Morin then filed several pleadings in which she asserted that the District Court had required her to choose either a dismissal of the breach of contract claim with prejudice, or participation in a "forced trial." She further characterized the prior bifurcation stipulation that she entered with State Farm as a "court ordered stipulation." In a subsequent hearing the District Court explained to Morin that there was no order that required her to dismiss the contract claim with prejudice; that the only order had been to deny her motion to dismiss the claim without prejudice; and that the Court was ready to proceed to trial on the merits. Several days later Morin stipulated with State Farm's counsel to dismiss the breach of contract claim *with prejudice*. Pursuant to that stipulation, the District Court ordered the breach of contract claim dismissed with prejudice. State Farm moved to enter judgment on the breach of contract claim, and in October, 2010, the District Court ordered that final judgment be entered on that claim alone.

---

[2] While Morin relied upon the asserted expense of "two trials," within two months she filed a second action against State Farm in Federal District Court, as discussed below.

¶9 After entry of the final judgment on the breach of contract claim, Morin failed to request a scheduling conference on the bifurcated tort claims within 60 days as required by the prior stipulation and District Court order. Several months after entry of the final judgment on the breach of contract claim, State Farm filed a motion to dismiss the remaining tort claims with prejudice as provided in the prior stipulation and order. Morin did not respond, and on January 20, 2011, the District Court entered an order dismissing the remaining tort claims with prejudice and entering final judgment. On February 1, 2011, State Farm served and filed a notice of entry of judgment as to the dismissal of all of the Wests' claims. Morin, on behalf of the Wests, did not object to dismissal of the tort claims or to entry of judgment in favor of State Farm. Morin later claimed that she did not receive notice of the motion to dismiss the tort claims. She also claimed that she did not respond to the request for entry of judgment or to the notice that judgment had been entered because she was "confused."

¶10 In the meanwhile, on November 29, 2010, after the State court proceedings had been dismissed, the West plaintiffs filed but did not immediately serve a complaint in United States District Court against State Farm, setting out essentially the same claims that had been made in the State court litigation. In January 2011, the Wests served the Federal court action on State Farm through the Montana Secretary of State. The Federal court conducted a preliminary pretrial conference on March 2, 2011, at which Magistrate Judge Lynch inquired of Morin as to the status of the State court action and the binding effect that the dismissal of that action might have on the new Federal court action. Morin objected to consideration of the State court record, contending that it was based upon

5

"inaccurate and misrepresented information." Morin further specifically stated to the Magistrate Judge several times that she had filed a "motion to reconsider" or a "Rule 60 motion" regarding the dismissal of the State court claims and the judgments entered in favor of State Farm. She stated to the Magistrate Judge that while the claims had been dismissed with prejudice, "the plaintiffs opposed it."

¶11     On March 4, 2011, two days *after* the preliminary pretrial conference before Magistrate Lynch in the Federal case, Morin filed in the State court a "Motion to Reconsider Based Upon New and Clarifying Information." Morin failed to file a brief in support of the motion, and failed to cite any legal authority. The text of the motion itself accused State Farm of violating the prior bifurcation stipulation and of violating an "Order of Protection." There was no Order of Protection in the State case.

¶12     On March 8, 2011, State Farm moved to dismiss the Federal action on several grounds, including claim preclusion based upon the dismissal of the State court claims with prejudice. Magistrate Lynch recommended that the case be dismissed, and Morin did not file a timely objection to the recommendation. On July 20, 2011, the United States District Court dismissed the Federal action.[3] Morin appealed to the Ninth Circuit, which affirmed. At that point all of the Wests' claims against State Farm had been dismissed in both State and Federal court.[4]

---

[3] Federal courts give preclusive effect to state court judgments, applying collateral estoppel and res judicata. *Adam Bros. Farming v. County of Santa Barbara*, 604 F.3d 1142, 1148 (9th Cir. 2010); *Engquist v. Ore. Dept. of Ag.*, 478 F. 3d 985, 1007 (9th Cir. 2007).

[4] Morin had asserted in court filings that the Wests' claims in the State court action were worth hundreds of thousands of dollars.

6

¶13    On March 18, 2011, in the State court action Morin filed a document captioned "Plaintiffs' Rule 30(b)(6) [sic] Request Is [sic] Based Upon New Information and Fraud Upon this Court by Defendant State Farm."   That document made a number of contentions, including that State Farm had violated the bifurcation stipulation; that plaintiffs had been "leveraged into an abeyance" by State Farm based upon attorney Meismer's illness; that State Farm violated an unidentifiable "Abeyance Agreement;" that State Farm had deceived the District Court with its request to dismiss the tort claims; that State Farm concealed its breach of the "Abeyance Agreement;" that State Farm deceived the District Court by failing to inform it that Morin had filed the separate Federal action; and that State Farm had failed its obligation to notify plaintiffs of their need to get new representation upon Meismer's death.  The document also claimed that State Farm "withheld notice" of its motion to dismiss the tort claims until after the District Court agreed to the dismissal.   State Farm responded, contesting Morin's assertions.

¶14    The District Court entered an opinion and order on April 29, 2011, denying Morin's "Motion to Reconsider Based Upon New and Clarifying Information" and "Plaintiffs' Rule 30(b)(6) Request Is Based Upon New Information and Fraud Upon this Court by Defendant State Farm."   The District Court listed a number of factual statements in these filings that were "unsupported by citation to the record, by supporting affidavits or by other evidence . . . ." The District Court found that Morin had been served with State Farm's motion to dismiss the tort claims and the request for judgment despite her claims to the contrary.  The District Court found that "plaintiffs had slept on

their rights" and had thereby allowed all claims in the State court action to be dismissed. The District Court found that there was nothing in the record called an "Abeyance Agreement;" that there was no evidence that plaintiffs were leveraged into bifurcating the claims in the case; that there was no evidence of a breach of the bifurcation stipulation; and that nothing entitled plaintiffs to avoid dismissal of their tort claims by filing a separate action in Federal court. The District Court found that Morin's assertion that plaintiffs could not afford two trials "remains unsupported and unpersuasive" and "strains credibility." The District Court also found that plaintiffs had not made any material argument that they were entitled to relief under M. R. Civ. P. 60(b)(6), but only relied upon a "series of unsupported allegations."

¶15 In July 2011, Morin filed an application with this Court for a writ of supervisory control. The application alleged fraudulent misconduct by State Farm in the District Court, gender-based and personal attacks against the Wests and Morin, and State Farm's "shameful manipulation" of the District Court. This Court found that Morin's pleading was "difficult to understand," and that it contained "unsubstantiated allegations of serious ethical violations," and failed to "adequately explain the status of the case or the nature of the relief requested." This Court denied the application by order of July 26, 2011.

¶16 On May 3, 2011, State Farm moved for Rule 11 sanctions solely against attorney Morin and not her clients, based upon the content of Morin's "Motion to Reconsider Based Upon New and Clarifying Information" (District Court Doc. No. 120) and "Plaintiffs' Rule 30(b)(6) Request Is Based Upon New Information and Fraud Upon this Court by Defendant State Farm" (Doc. No. 122). State Farm filed a brief in support of

8

the motion arguing that those pleadings had no reasonable basis in fact, were premised upon false statements, were filed for the improper purpose of re-litigating issues already decided, and were filed to avoid dismissal of the Federal case. State Farm also presented a transcript of the conference with Magistrate Lynch in United States District Court in which Morin falsely stated that she had already filed a motion to reconsider dismissal of the State court claims, and in which she stated that State Farm had failed to respond. Morin failed to respond to State Farm's motion and brief. Instead, on June 1, 2011, Morin filed her own motion for Rule 11 sanctions against State Farm's attorney Brad Luck (Doc. No. 129), supported by a subsequent "reply brief" (Doc. No. 134).

¶17 The District Court found Morin's reply brief in support of her motion for sanctions to be an "escalation" of the unsupported attacks against Luck and State Farm that she began in her motion for sanctions. Morin repeatedly asserted that State Farm's attorney, Luck, was guilty of all manner of wrongdoing, using accusatory terms such as vicious, shameful, assault, atrocious, legal bully, intimidation, and abuse. She alleged that Luck obtained dismissal of the tort claims in the State court action "without the Plaintiffs' knowledge." Morin claimed that she was never notified that State Farm sought dismissal of the tort claims pursuant to the bifurcation stipulation and order. The level and tone of Morin's attacks were such that on July 7, 2011, the District Court entered, sua sponte, an "Order to Cease Personal Attacks Upon Opposing Counsel" to protect "the integrity of the judicial process." That order stated that the District Court was considering the opposing motions for Rule 11 sanctions with respect to all relevant pleadings filed by any party.

9

¶18 On November 17, 2011, the District Court entered an Order to Show Cause and Setting Hearing. In that Order, the District Court found that there was no basis for Morin's motion for sanctions against Attorney Luck, but found "ample basis upon which to sanction Attorney Morin for filing documents numbered 120, 122, 129, and 134 (identified in ¶ 16 above) in the District Court record. The District Court found that those documents were filed for an improper purpose, contained contentions not well grounded in fact, and contained contentions unwarranted by existing law or by a good faith argument for the extension, modification or reversal of existing law. The District Court scheduled a hearing for Morin to show cause why she should not be sanctioned.

¶19 The District Court held the show cause hearing on State Farm's motion for Rule 11 sanctions on January 11, 2012. Morin testified. The result of that hearing was the District Court's April 10, 2012, 111-page "Findings of Fact, Conclusions of Law and Order: Morin Rule 11 Sanctions." The District Court undertook an exhaustive and detailed review of the record and of many of the specific statements, allegations and accusations that Morin had made in the four District Court pleadings that she filed since the underlying case was dismissed.

¶20 The District Court found that Morin's filings contained numerous statements with no basis in fact or that indicate they were made for improper purposes. The District Court found that Morin's motion for sanctions contained numerous statements "more properly characterized as a litany of unwarranted and unprofessional slurs and slanders" against Luck and State Farm. Morin stated, for example, that Luck and State Farm "attacked" her client Sarah West because Sarah had been a victim of sexual abuse and

that Luck and State Farm attacked Sarah's parents for allowing that abuse to happen. Morin accused Luck of successfully "abusing a dying attorney" in the case, referring to Paul Meismer. Morin accused Luck of using the court as his "professional hammer" to beat down claims against State Farm.

¶21 The District Court thoroughly analyzed each and every allegation contained in Morin's motion for sanctions and concluded that the document "contains a smorgasbord of unsupported, unprofessional, inflammatory and shallow conclusions with no basis in fact or law that were interposed for the improper purposes of harassing Attorney Luck and State Farm, fostering bias and prejudice, delaying the resolution of State Farm's motion for sanctions, providing a tardy response to such motion, delaying the resolution of the related matter in the federal courts, and misleading Attorney Morin's clients with respect to her own professional errors and omissions."

¶22 A passage that is instructive of Morin's filings in this period follows:

> Just like the adult male sexual perpetrator who rapes the 15-year-old child, and then refuses accountability, but instead escalates the attacks on the credibility and person of the raped child, Brad Luck and State Farm have escalated their legal attacks upon [the Wests] by attacking their attorney. If the 15-year-old child is brave enough to bring forward her claim of rape against the adult male, the sexual perpetrator and bully begins an all out assault on the child's credibility and character. Statements such as, "She was wearing a short skirt, what did she expect?" are leveled against the child. Accusations such as, "She wanted it!" are leveled against the child. Excuses such as, "Why did she get in his car anyway?" are leveled against the child. These distraction techniques are used specifically to distract from the actual assault and rape that occurred against her.
> Similarly, Mr. Luck and State Farm Insurance Company hope to distract from State Farm's bad faith and legal assaults against [the Wests]. Brad Luck and State Farm Insurance Company hope to distract this Court

11

from their shameful actions against [the Wests] and focus upon the [Wests'] attorney's attempt to represent them in this court of law.

The District Court found that this language was not credible, and was interposed for the improper purpose of delaying final resolution of the Wests' cases.

¶23 The District Court's analysis showed that Morin filed documents containing numerous false statements not supported by fact. The District Court concluded that Morin's testimony at the show cause hearing was not credible, particularly her contention that the tort claims in the District Court action were dismissed without notice to her. The District Court found that Morin had specifically lied to Magistrate Judge Lynch in the Federal court proceedings by representing that she had filed a motion to reverse the order dismissing the State court case when in fact she had not done so.

¶24 The District Court determined that any reasonable inquiry by Morin would have revealed that the disputed documents were not well grounded in fact, were not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and were interposed for improper purposes. The District Court determined that those purposes were harassment of opposing party and attorneys, causing unnecessary delay in the resolution of both the State and Federal cases, and causing a needless increase in the cost of the litigation. The District Court also found that Morin was motivated by trying to cover up the false statements she made to United States Magistrate Judge Lynch in the Federal court proceedings.

¶25 The District Court further found that Morin's purpose in the unfounded pleadings was to mislead her own clients, the Wests, as to her own errors and omissions that had

resulted in the dismissal of all their claims in both State and Federal courts. The District Court determined that Morin had been "purposefully inattentive" to matters in the State court after she filed the action in Federal District Court, resulting in the dismissal of all the Wests' claims. The District Court found that Morin had "fabricated" the claim that she never got notice of State Farm's request to dismiss the tort claims pursuant to the bifurcation stipulation and order, and that her testimony to the contrary was not credible. The District Court determined that Morin intended to prevent the Wests from understanding her "own culpability (1) in failing to monitor the litigation before this Court and (2) in failing to appreciate the preclusive effect on the federal action of permitting a final judgment on the merits" on the State court claims. The District Court found that Morin filed the disputed pleadings in an attempt to mislead her own "clients with respect to her professional errors and omissions in this matter."

¶26 The District Court found that Morin's testimony regarding the decision to bifurcate the claims in the State court case, and particularly her allegations that attorney Luck had leveraged and mistreated Paul Meismer during his terminal illness to be "not credible, directly contradicting the record in this cause." The District Court determined that Morin had acted willfully and in subjective bad faith and should be sanctioned.

¶27 The District Court set out a range of sanctions under consideration including requiring Morin to pay State Farm's attorney fees and costs incurred in the case after she filed Document No. 120 (see ¶ 16 above); requiring Morin to pay an equal amount as a fine to the District Court for its time and effort; distributing the Findings of Fact to each State district court judge; requiring Morin to take and pass the Multistate Professional

13

Responsibility Exam (MPRE); requiring Morin to take and pass a basic legal research and writing course at the University of Montana School of Law; and referring the Findings of Fact to the Office of Disciplinary Counsel. The District Court set a hearing on the extent of the sanctions to be imposed.

¶28 The sanctions hearing was held May 9, 2012, and Morin failed to personally appear. Her attorney appeared and offered a brief and a "Sanctions Affidavit of Tracey Morin." The affidavit explained her position on the District Court's findings and proposed sanctions. She affirmed that she intended to change her practice in reaction to the District Court's findings, and she stated that she apologized to the "Court, opposing counsel (Mr. Luck in particular) and to the bar for my inappropriate words and actions."[5] The District Court received the Morin affidavit along with testimony from attorney Tom Budewitz who opined that the number of attorney hours claimed by State Farm was excessive.

¶29 On May 31, 2012, the District Court entered its "Additional Findings of Fact, Conclusions of Law and Sanctions Order." The District Court analyzed the evidence presented as to State Farm's attorney fees expended since Morin filed Doc. No. 120 (see ¶ 16 above), and detailed each hour in the State Farm fee request. The District Court found that the claim for 148.5 attorney hours and 18.3 paralegal hours was reasonable, as were the hourly rates for each professional who billed time. The District Court considered the testimony of Morin's expert Mr. Budewitz regarding the number of hours

---

[5] The District Court discounted the sincerity of Morin's apology based upon a nearly contemporaneous filing in the Federal court proceedings in which she continued to accuse State Farm and Luck of wrongdoing and in which she attempted to minimize her actions in State court.

that the State Farm attorneys should reasonably have expended on the Morin matters. While the District Court found that Mr. Budewitz was "apparently honest and well meaning," the District Court concluded that he failed to understand the complexity of the case and that his analysis was "unilluminating." The District Court noted that Morin presented no evidence regarding her financial resources or her ability to pay the proposed attorney fees and fine. To the contrary, Morin described herself as a successful attorney who obtains large awards for her past clients.

¶30 The District Court discussed in detail the legal standards applicable to Rule 11 sanctions and the need to impose "the least severe sanction adequate in light of the full record in this matter." The District Court considered the reasonableness of the attorney fees in light of the amount and character of services rendered; the time, labor, and trouble involved; the character and importance of the litigation; the amount of money or value of property involved; the professional skill and experience called for; the attorney's character and standing in the profession and the result secured. Applying those considerations to this case, the District Court determined that State Farm's requested fees of $35,840.92 were reasonable.

¶31 As to the additional fine, the District Court determined that paying attorney fees alone would be insufficient to deter Morin from similar conduct in the future because of her animus against Luck and State Farm, the vast magnitude of her errors and omissions against her clients, and her complete subjective bad faith. The District Court found that Morin "would gladly accept paying State Farm its attorney fees for the opportunity to [continue to] make such filings." Therefore, the District Court ordered that Morin must

15

also "pay for the effort the Court expends in responding to such filings as if the Court were a private law firm charging reasonable attorneys fees." The District Court noted that Morin did not challenge this formulation of the fine and set it at $32,908.75.

¶32 The District Court noted that the point of the monetary sanctions was not just to reimburse State Farm or the Court for their time, but rather deter Morin from future similar conduct. The District Court also considered Morin's argument that the proposed sanctions were too severe when compared to sanctions imposed in other reported cases. The District Court explained that the issue is not what was done in another case. Rather, the issue was what level of sanction is "adequate to accomplish the purposes of Rule 11, not whether a similar award was made in the past."

## STANDARD OF REVIEW

¶33 This Court reviews a district court's decision on Rule 11 sanctions to determine whether the findings of fact are clearly erroneous, and whether the conclusions constitute an abuse of discretion. *Madison Add. Arch. Comm. v. Youngwirth*, 2000 MT 293, ¶ 10, 302 Mont. 302, 15 P.3d 1175; *Carl Weissman & Sons v. D & L Thomas Equip. Co.*, 1998 MT 213, ¶ 53, 290 Mont. 433, 963 P.2d 1263; *McCracken v. City of Chinook*, 242 Mont. 21, 26, 788 P.2d 892, 895 (1990). A district court has the flexibility to deal appropriately with violations of Rule 11 and to tailor sanctions to fit the particular case. *Gold Reserve Corp. v. McCarty*, 288 Mont. 512, 515, 744 P.2d 160, 162 (1987). The district court is in the best position to evaluate the credibility of the testimony offered in a Rule 11 proceeding. *Bulen v. Navajo Refining Co.*, 2000 MT 222, ¶ 35, 301 Mont. 195, 9 P.3d 607.

¶34 We review a district court's award of attorney fees for an abuse of discretion in light of the facts of the case. *Good Schools Missoula, Inc. v. Missoula County Public School District*, 2008 MT 231, ¶ 16, 344 Mont. 374, 188 P.3d 1013.

**DISCUSSION**

¶35 The issue on appeal is narrow. Morin does not contest any of the District Court's findings of fact or its conclusions of law regarding her conduct or her motivations for that conduct in the proceedings below. She does not dispute that she signed and filed the pleadings at issue in violation of Rule 11. She does not contest that she filed the pleadings for improper purposes, including the purpose of delaying and extending proceedings in State and Federal courts; the purpose of attempting to instill bias and prejudice against State Farm and its attorney during the litigation; the purpose of hiding her professional errors and omissions from her own clients; and the purpose of providing herself cover for lies she told to the United States Magistrate. She does not contest that she lied to the United State Magistrate. She does not contest the determination that she fabricated her testimony in District Court that she did not receive notice that State Farm had moved to dismiss the remaining tort claims pursuant to the bifurcation stipulation and order. She does not contest the determination that she fabricated her testimony in District Court that State Farm attempted to use Paul Meismer's fatal illness as leverage against her and her clients. She does not contest that she repeatedly and without foundation used slurs, baseless accusations of fraud and wrongdoing, accusations of sexism and gender bias by the District Court and opposing counsel, and name calling in her pleadings.

¶36 The only issue on appeal, therefore, is whether the District Court abused its discretion by imposing the sanctions. Morin contends that the District Court's monetary sanctions imposed against her are too severe when compared to the sanctions imposed in other reported cases. She does not specifically contest the non-monetary sanctions and, for example, has already taken and passed the MPRE test. She does not contest the District Court's power to impose both attorney fees and a monetary fine and she does not raise any issue regarding her ability to pay.

¶37 Montana Rule of Civil Procedure 11[6] requires that when an attorney signs a pleading the attorney has read it and that to the best of the attorney's knowledge formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for a change in existing law, and is not interposed for any improper purpose. Therefore, there are two grounds for imposing sanctions: the "frivolousness clause," meant to cover pleadings not grounded in fact or law; and the "improper purpose clause," meant to cover pleadings filed for an improper purpose. *D'Agostino v. Swanson*, 240 Mont. 435, 445, 784 P.2d 919, 925 (1990).

¶38 If a pleading is signed in violation of Rule 11 the district court "shall impose . . . an appropriate sanction." *Bulen*, ¶ 21. The purpose of Rule 11 is to discourage dilatory or abusive tactics and to streamline the litigation process by lessening frivolous claims or defenses. Monetary sanctions should not be viewed simply as a fee-shifting device because the "more important goal is punishment for wasteful and abusive litigation

---

[6] The District Court determined, and all parties agree, that the 2009 language of Rule 11 prior to the 2012 amendments applies to this case.

tactics in order to deter the use of such tactics in the future." *D'Agostino*, 240 Mont. at 444-45, 784 P.2d at 925. The district court, having "tasted the flavor of the litigation," is in the best position to evaluate the disputed conduct in the context of the case. *D'Agostino*, 240 Mont. at 444-45, 784 P.2d at 925. While a finding of subjective bad faith is not required in a Rule 11 analysis, such a finding is relevant when considering the nature and severity of the sanction. *D'Agostino*, 240 Mont. at 448, 784 P.2d at 927.

¶39 The present case should not be viewed as one in which an attorney has been substantially sanctioned only for name calling and baseless factual allegations. Morin's filings were replete with name calling and baseless factual allegations and that conduct alone would have justified sanctions. As the District Court carefully explained, however, the important point of this case is that Morin used those tactics, in subjective bad faith, to provide herself cover--from her own clients--for her own professional acts and omissions. Further, she used those tactics, in subjective bad faith, to provide herself cover for the lies she told to the United States Magistrate--that she had filed pleadings contesting the dismissal of all of the claims in the State court action, when she in fact had not done so.

¶40 In addition, Morin's actions were not just an exercise in hyperbole or excited overstatement. As the District Court found, Morin lied in sworn testimony when she claimed she did not receive notice of the dismissal of the tort claims in State court, and lied again when she contended that State Farm had tried to use the terminal illness of Paul Meismer to leverage concessions. As noted, Morin does not contest the District Court's findings of fact on these points.

19

¶41 The District Court painstakingly considered the Rule 11 implications of Morin's assertions, allegations and tactics, issuing detailed written opinions covering over 150 pages. In the face of the facts, having "tasted the flavor" of the litigation, and having observed Morin's deportment and testimony, the District Court was in the best position to determine the level of sanction that would both punish Morin for her conduct and deter her from similar conduct in the future. In that regard, the District Court specifically considered the minimum level of sanction that would do the job. The District Court found that in Morin's specific case, no lesser level of sanction could achieve the goals of punishment and deterrence. The District Court concluded that Morin would willingly pay State Farm's attorney fees as a price for continuing into the future with the conduct she demonstrated in this case.

¶42 Under these circumstances, we determine that the District Court did not abuse its discretion in imposing the level of sanctions imposed in this case. Morin's argument that lesser sanctions have been imposed in other cases is unavailing. As noted, each case of Rule 11 sanctions must be based upon its own facts and circumstances, and that is exactly what the District Court did here.

¶43 The District Court did not abuse its discretion and its imposition of sanctions is affirmed.

/S/ MIKE McGRATH

We concur:

/S/ BRIAN MORRIS
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ BETH BAKER